1  ROBBINS GELLER RUDMAN
     & DOWD LLP
2  DARREN J. ROBBINS(168593)
   BRIAN E. COCHRAN (286202)
3  655 West Broadway, Suite 1900
   San Diego, CA  92101
4  Telephone:  619/231-1058
   619/231-7423 (fax)
5  darrenr@rgrdlaw.com
   bcochran@rgrdlaw.com
6
   Attorneys for Plaintiff
7
   [Additional counsel appear on signature page.]
8

9                    UNITED STATES DISTRICT COURT

10                 SOUTHERN DISTRICT OF CALIFORNIA

11  WATER ISLAND EVENT-DRIVEN          )  Case No.  '23CV1607 LAB WVG
    FUND, on Behalf of Itself and All  )
12  Others Similarly Situated,         )  CLASS ACTION
                                       )
13                       Plaintiff,    )  COMPLAINT FOR VIOLATIONS OF
                                       )  THE FEDERAL SECURITIES LAWS
14       vs.                           )
                                       )
15  MAXLINEAR, INC., KISHORE           )
    SEENDRIPU, and STEVEN              )
16  LITCHFIELD,                        )
                                       )
17                       Defendants.   )
                                       )  DEMAND FOR JURY TRIAL
18  _____)

19

20

21

22

23

24

25

26

27

28

Plaintiff Water Island Event-Driven Fund ("plaintiff"), on behalf of itself and all others similarly situated, by plaintiff's undersigned counsel, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through counsel, which included, among other things, a review of certain U.S. Securities and Exchange Commission ("SEC") filings and public statements by MaxLinear, Inc. ("MaxLinear") and Silicon Motion Technology Corporation ("Silicon Motion"), as well as media and analyst reports about MaxLinear and Silicon Motion, their failed merger ("Merger"), and the facts alleged herein. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## SUMMARY OF THE ACTION

1. This is a securities class action brought on behalf of purchasers of the American Depositary Shares ("ADSs") of Silicon Motion from June 6, 2023 through July 26, 2023, inclusive (the "Class Period"). This case arises out of defendants' omission of material facts in connection with public statements made by defendants concerning the MaxLinear and Silicon Motion Merger. Plaintiff seeks to pursue remedies against MaxLinear and two of MaxLinear's senior executives under §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and SEC Rule 10b-5 promulgated thereunder.

2. MaxLinear is a provider of fabless radio frequency ("RF"), analog, and mixed-signal integrated circuits ("ICs") often referred to as chips, microchips, or semiconductors. Silicon Motion is likewise a fabless chipmaker which designs, develops, and markets NAND flash controllers for solid-state storage devices.

3. On May 5, 2022, MaxLinear and Silicon Motion announced the two companies had entered into a merger agreement pursuant to which MaxLinear would acquire Silicon Motion. Thereafter, when asked about the pending Merger and the synergies it would purportedly create, defendants publicly confirmed the benefits of

the Merger while affirming MaxLinear's intention to close the Merger and underscoring that MaxLinear remained "very, very, . . . bullish" on the "synergies that we told you all about." For example, during a June 6, 2023 conference call with investors, MaxLinear's Chief Executive Officer ("CEO"), defendant Kishore Seendripu, stated that even while "the revenues of the combined companies have come down . . . *the basic rationale has not changed at all*." Yet the true facts, which defendants knew or recklessly disregarded, were that MaxLinear had decided it would not consummate the Merger because the circumstances surrounding the Merger had materially changed, including that: (i) there had been a material downturn in the semiconductor industry and rising interest rates; (ii) MaxLinear had determined to unilaterally terminate the Merger in the event the Merger was approved by Chinese regulatory authorities; (iii) MaxLinear intended to argue that certain conditions in Article 6 of the Merger Agreement had not been satisfied as required by May 5, 2023 (*i.e.*, before the Class Period) as a basis to terminate the Merger; and (iv) as a result of (i)-(iii), defendants had materially misrepresented the viability of the Merger, the purported benefits of the Merger, and the likelihood that the Merger would be consummated.

4.     On July 26, 2023, near the close of trading, MaxLinear stunned the market, issuing a press release stating it was unilaterally terminating the Merger less than a day after Chinese regulatory authorities had approved the combination. In response to this revelation, the price of Silicon Motion ADSs declined by over $41 to $52.51 per ADS, inflicting substantial harm and economic damages on plaintiff and the Class as defined below.

## JURISDICTION AND VENUE

5.     Jurisdiction is conferred by §27 of the Exchange Act, 15 U.S.C. §78aa. The claims asserted herein arise under §§10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R.

§240.10b-5. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

6. Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b) because MaxLinear conducts business and resides in this District, and the events and omissions giving rise to the claims asserted herein occurred in substantial part in this District, including the dissemination of false and misleading statements in and from this District.

7. In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

8. Plaintiff Water Island Event-Driven Fund, as set forth in the accompanying certification, which is incorporated by reference herein, purchased Silicon Motion ADSs during the Class Period and has been damaged thereby.

9. Defendant MaxLinear is a Delaware corporation with its principal executive offices located in Carlsbad, California. MaxLinear common stock is listed and publicly traded on the Nasdaq Global Select Market ("NASDAQ") under the ticker symbol "MXL." MaxLinear is a provider of RF, analog, and mixed-signal ICs – sometimes referred to as chips, microchips, or semiconductors – for the connected home, wired and wireless communications infrastructure, and industrial and multi-market applications.

10. Defendant Kishore Seendripu ("Seendripu") is a co-founder of MaxLinear and has served as its Chairman, President, and CEO since the Company's inception in 2003. Seendripu is also a member of MaxLinear's Board of Directors (the "Board").

11. Defendant Steven Litchfield ("Litchfield") has served as Chief Financial Officer ("CFO") and Chief Corporate Strategy Officer of MaxLinear since July 2018.

12.   Defendants referenced above in ¶¶10-11 are referred to herein as the "Individual Defendants."  The Individual Defendants and MaxLinear are referred to herein as "defendants."

13.   Each of the Individual Defendants was directly involved in the management and day-to-day operations of MaxLinear at the highest levels and was privy to confidential proprietary information concerning MaxLinear and its business, operations, services, plans, and present and future business prospects.  In addition, the Individual Defendants were involved in drafting, producing, reviewing, and/or disseminating the false and misleading statements and information alleged herein, and were aware of, or recklessly disregarded, defendants' materially misleading omissions and false and misleading statements concerning the Merger, and approved or ratified these statements, in violation of the federal securities laws.

14.   As officers and controlling persons of a publicly held company whose securities are registered with the SEC pursuant to the Exchange Act and traded on the NASDAQ, which is governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to promptly disseminate accurate, truthful, and complete information with respect to MaxLinear's operations, business, services, expenditures, and present and future business prospects, including about its Merger with Silicon Motion.  In addition, the Individual Defendants each had a duty to correct any previously issued statements that were materially misleading or untrue, so that the market price of Silicon Motion ADSs would be based upon truthful, accurate, and complete information.  Defendants' misrepresentations and omissions violated these specific requirements and obligations.

15.   The Individual Defendants, because of their positions of control and authority as officers and/or directors of MaxLinear, were able to, and did, control the contents of various SEC filings, press releases, and other public statements pertaining to MaxLinear and its Merger with Silicon Motion.  Each Individual Defendant was provided with copies of the documents alleged herein to be false and misleading

1  before or shortly after their issuance, participated in conference calls with investors

2  during which false and misleading statements were made, and had the ability and

3  opportunity to prevent their issuance or cause them to be corrected.  Accordingly,

4  each Individual Defendant is responsible for the accuracy of the public statements

5  detailed herein and is, therefore, primarily liable for the representations contained

6  therein.

7  **RELEVANT NON-PARTY**

8  16.  Silicon Motion is a Cayman Islands company with its global headquarters

9  in Zhubei, Taiwan.  The company was founded in Silicon Valley, U.S.A. in 1995, and

10  currently operates in Taiwan, the United States, Korea, China, Malaysia, Singapore,

11  and internationally.  Its ADSs are listed and traded on the NASDAQ, with each ADS

12  representing four ordinary shares of Silicon Motion.  As detailed below, in May 2022

13  MaxLinear agreed to acquire Silicon Motion at a significant premium.  In July 2023

14  MaxLinear revealed the truth about the Merger and repudiated the Merger Agreement,

15  harming Silicon Motion investors.

16  **BACKGROUND**

17  **MaxLinear Agrees to Acquire Silicon Motion**

18  17.  MaxLinear provides communications systems-on-chip solutions used in

19  broadband, mobile, and wireline infrastructure, data center, and industrial and multi-

20  market applications.  MaxLinear is a fabless (non-manufacturing) IC design company

21  whose products integrate all or substantial portions of a high-speed communication

22  system, including RF, high-performance analog, mixed-signal, digital signal

23  processing, security engines, data compression and networking layers and power

24  management.  Its customers include electronics distributors, module makers, original

25  equipment manufacturers ("OEMs"), and original design manufacturers ("ODMs"),

26  which incorporate MaxLinear's products in a wide range of electronic devices.

27  Examples of such devices include cable Data Over Cable Service Interface

28  Specifications ("DOCSIS"); fiber and DSL broadband modems and gateways; Wi-Fi

and wireline routers for home networking; radio transceivers and modems for 4G/5G base-station and backhaul infrastructure; fiber-optic modules for data center, metro, and long-haul transport networks; as well as power management and interface products used in these and many other markets.

18. Silicon Motion is likewise a fabless chipmaker which designs, develops, and markets NAND flash controllers for solid-state storage devices.[1]  The company offers controllers for computing-grade solid state drives ("SSDs"), which are used in PCs and other client devices; enterprise-grade SSDs used in data centers; embedded multi-media card ("eMMC") and universal flash memory ("UFS") mobile embedded storage for use in smartphones and Internet of Things ("IoT") devices; flash memory cards and flash drives for use in expandable storage; and specialized SSDs that are used in industrial, commercial, and automotive applications.[2]  Silicon Motion markets its controllers under the SMI brand; enterprise-grade SSDs under the Shannon Systems brand; and single-chip industrial-grade SSDs under the FerriSSD, Ferri-eMMC, and Ferri-UFS brands.  The company markets and sells its products through direct sales personnel and independent electronics distributors to NAND flash makers, module makers, hyperscalers, and OEMs.

19. On May 5, 2022, MaxLinear announced that it had executed a merger agreement with Silicon Motion (the "Merger Agreement") pursuant to which MaxLinear would acquire Silicon Motion, by merging a wholly-owned subsidiary of MaxLinear with and into Silicon Motion, with Silicon Motion surviving the Merger as a wholly-owned subsidiary of Max Linear.

---

[1]   NAND flash memory is a type of non-volatile storage technology that does not require power to retain data.

[2]   eMMC is a NAND flash memory for mobile applications and memory solution for consumer electronics such as tablets, smartphones, GPS systems, eReaders, and other mobile computing devices.  UFS is the next generation of flash memory with high data transfer speed, high reliability, and low power consumption.

20.     Under the terms of the Merger Agreement, the transaction consideration consisted of: (i) $93.54 in cash and 0.388 shares of MaxLinear common stock for each Silicon Motion ADS (other than ADSs representing certain customarily excluded shares) for total per ADS consideration of $114.34 (based on MaxLinear's $53.61 May 4, 2022 closing price); and (ii) $23.385 in cash and 0.097 shares of MaxLinear common stock for each Silicon Motion ordinary share not represented by an ADS (other than certain customarily excluded shares) for total per ordinary share consideration of $28.59; in each case, with cash in lieu of any fractional shares of MaxLinear common stock. The amount to be paid represented a 48% premium to the $77.09 closing price for Silicon Motion ADSs on April 22, 2022 – the last trading day before it was reported that Silicon Motion was exploring a sale.

21.     Upon closing of the transaction, MaxLinear stockholders were expected to own approximately 86% of the combined company and former Silicon Motion security holders were expected to own approximately 14% of the combined company. Based on the closing price of MaxLinear shares on May 4, 2022, the value of the consideration to be paid for Silicon Motion in cash and stock was approximately $3.8 billion. MaxLinear was able to fund up to $3.1 billion of cash consideration with cash on hand and a fully committed debt financing from Wells Fargo Bank, N.A. and Wells Fargo Securities, LLC. The Merger was not subject to any financing conditions, but was subject to satisfaction of customary closing conditions.

22.     MaxLinear and Silicon Motion issued a joint press release on May 5, 2022, announcing the Merger and describing some of its purported benefits as follows:

- ***Creates transformative scale and a highly profitable $2+ billion revenue semiconductor company***

- ***Addition of Silicon Motion's NAND flash controller technology and customer relationships complements MaxLinear's leadership in Broadband, Connectivity, and Infrastructure markets***

- 7 -

- ***Business combination roughly doubles MaxLinear's total addressable market opportunity to $15 billion and creates a top-ten fabless semiconductor supplier***

- ***Synergistic technology combination accelerates strategic infrastructure growth across compute, networking, and storage domains***

- ***Silicon Motion shareholders to receive $93.54 in cash and 0.388 shares of Maxlinear common stock per ADS, for total per ADS consideration of $114.34 (based on MaxLinear's May 4, 2022 closing price), representing a 48% premium to the undisturbed market value as of April 22, 2022, in cash and stock transaction valuing Silicon Motion at $3.8 billion***

\*    \*    \*

"Today's announcement celebrates the combination of two companies that have driven significant innovation in their respective industries for over a decade," said Kishore Seendripu, Ph.D., Chairman and CEO of MaxLinear. "The enhanced scale of the combined organization creates a new significant $2B+ player in the semiconductor industry with compelling positions across a diversified set of end-markets. MaxLinear has demonstrated a strong track record of integration success and looks for this combination to create robust growth, impressive operating margins and significant cash flows."

(Emphasis in original.)

23. On July 13, 2022, MaxLinear's registration statement ("Registration Statement") on Form S-4 for the shares to be issued in the Merger was declared effective by the SEC. That same day, MaxLinear and Silicon Motion each filed with the SEC the joint proxy statement of Silicon Motion and prospectus of MaxLinear ("Joint Proxy/Prospectus"), which was incorporated as part of the Registration Statement.

24. On August 31, 2022, Silicon Motion shareholders approved the Merger at an extraordinary general meeting.

**U.S.-China Relations**

25. As discussed above, MaxLinear and Silicon Motion are fabless chipmakers that rely on fabs (microchip fabrication plants) located in China and Taiwan to manufacture their products. As such, at the time the Merger was

announced, both companies were vulnerable to geopolitical tensions between the United States and China.

26.     On October 7, 2022, the United States government announced sweeping new limits on the sale of certain semiconductor technology to China.  According to *The New York Times*, the trade restrictions were "aimed at crippling Beijing's access to critical technologies that are needed for everything from supercomputing to guiding weapons."  Companies were no longer allowed to supply certain advanced computing chips, chip-making equipment, and other products to China unless they received a special license.  Most of those licenses would likely be denied, though certain shipments to facilities operated by U.S. companies or allied countries would be evaluated case by case, according to a senior administration official.  Samm Sacks, a senior fellow at Yale Law School who studies technology policy in China, said the new rules could push Beijing to impose retaliatory restrictions on American companies or firms from other countries that comply with U.S. rules that maintain operations in China.

27.     In the context of the proposed Merger between MaxLinear and Silicon Motion, the new trade restrictions led to increased uncertainty as to whether China's State Administration for Market Regulation ("SAMR"), the country's antitrust regulator, would permanently restrain, enjoin, or otherwise prohibit consummation of the Merger and thus scuttle the deal.

28.     In fact, even before the U.S. government's new trade restrictions were announced, SAMR had already made clear that the Merger would be subject to heightened scrutiny.  On July 6, 2022, MaxLinear and Silicon Motion submitted a simplified filing with SAMR, essentially seeking an expedited review.  On August 31, 2022, however, SAMR advised the parties to refile using the normal procedure, which the parties later did.

**The Economic Downturn in the Semiconductor Market**

29.     In addition to the ongoing trade tensions between the United States and China, the semiconductor market weakened in 2022 due to factors such as rising inflation, the Russian war against Ukraine, COVID-19 related shutdowns in China, and other supply chain issues.

30.     In June 2022, for example, International Data Corporation, which describes itself as the "premier global provider of market intelligence, advisory services, and events for the information technology, telecommunications, and consumer technology markets," projected declines in 2022 shipments of both smartphones and PCs.  Smartphones were forecast to decline 3.5% in 2022 after 6% growth in 2023; and PCs were forecast to decline 8.2% in 2022 after double-digit growth in 2020 and 2021.

31.     With the weakening global economy and declines expected in shipments of key sales drivers, in June 2022, Semiconductor Intelligence, a semiconductor industry consulting firm, lowered its semiconductor market forecast for 2022 to 9% growth – down from the 15% growth it forecast in February.

**MaxLinear Continues to Promote the Deal**

32.     Notwithstanding the ongoing Sino-U.S. trade tensions, defendants continued to promote the deal and its purported benefits, with MaxLinear and its executives representing to investors that they intended to consummate the Merger and that it was in the interests of MaxLinear to do so.

33.     On February 1, 2023, for example, on a conference call to discuss MaxLinear's fourth quarter 2022 and year-end 2022 financial results, defendant Seendripu reaffirmed the deal and its benefits: "We are also looking forward to our pending acquisition of Silicon Motion and are excited for the future growth opportunities of our comprehensive combined product portfolio."

34.     On the same call, defendant Litchfield also highlighted the Merger, stating in part as follows:

> Before we go to guidance, I want to give you an update on the status of our pending acquisition of Silicon Motion. We continue to progress with the SAMR approval process and remain optimistic for a mid-2023 close.
>
> We have fully committed financing for the transaction and are actively working to optimize the debt structure to lower our expected cost of capital. We are excited about the opportunities for our combined business and looking forward to bringing up our 2 technology-focused cultures together soon.

35.   Additionally, during the question and answer session with analysts, Litchfield had the following exchange with Suji Desilva, an analyst at ROTH MKM Partners, LLC:

> [Suji Desilva:] Just going back to the debt related to the planned Silicon acquisition. You talked about some potential to restructure or revisit that debt in the rates there. Can you just elaborate on what that opportunity is for you guys? And whether the deal is somewhat contingent on that? Or it sounds like the deal is financed, you said. So I just want to get clarity there.
>
> [Steven Litchfield:] Yes. So sure. Yes, the deal is financed. I mean I said in our prepared remarks about us continuing to work on increasing – or improving the cost of capital there. So looking to kind of move into the pro rata market, where we can pick up some additional share. We've had some interest. It comes at slightly lower rates. And so that's one of the things that we're doing to lower the overall debt cost.
>
> Clearly, interest rates have gone up. And while we're very confident on the synergies between the 2 organizations, the cost savings that can be achieved, but ultimately, the long-term growth that we can achieve is very encouraging and exciting. At the same time, in the short term, we got to make sure that we're very disciplined around spending, especially in some of these slower periods that we're going through right now.

36.   Similarly, on an April 26, 2023 conference call to discuss MaxLinear's first quarter 2023 financial results, defendant Seendripu stated: "We are also looking forward to a pending acquisition of Silicon Motion, which will further expand the growth opportunities for a combined comprehensive product portfolio."

37.   On the same call, defendant Litchfield similarly highlighted MaxLinear's purported intention to close the deal and extolled its benefits, stating in part as follows:

> Before we go to the guidance, I want to give you an update on the status of our pending acquisition of Silicon Motion.

- 11 -

We continue to progress through the SAMR approval process and remain confident of a mid-2023 close. We have fully committed financing for the transaction and are actively working to optimize the debt structure to lower our expected cost of capital. We're excited about the opportunities for our combined business and look forward to bringing our technology-focused cultures together very soon.

## DEFENDANTS' CLASS PERIOD MISCONDUCT

38.     The Class Period begins on June 6, 2023. On that date, MaxLinear and defendant Seendripu participated in the Stifel Cross Sector Insight Conference for investors ("Stifel Conference").

39.     At the Stifel Conference, Tore Svanberg (an analyst who covers semiconductors in Stifel's Technology Group) asked defendant Seendripu about MaxLinear's acquisition of Silicon Motion:

Okay. And the last topic of course, is SIMO, And I know there's a limitation to what you can say, but at least give us an update on the asset strategically. You talked about storage and data center, right? So I still believe this is an asset that you're very interested in acquiring?

40.     In response, defendant Seendripu represented that MaxLinear intended to consummate the Merger and highlighted the synergies it would create, stating in part as follows:

Look, we have to have conviction [in] what we do. And I don't think we touch anything where our core technology platform doesn't expand as into the adjacent markets, right? And storage is not an adjacent market. Our primary focus has been the enterprise market and the data center market.

And Silicon Motion is the number one merchant controller – storage controller supply in the world. And I don't look at controllers at stores. I look at his data traffic. I look at it as how do you improve latency and speed of access and the amount of the memory. Today, non-memory is monstrous, right?

But the most important thing about the memory is if you look at the storage network is that, you know, speed of access of the data and integrity of the data and throughput. And now with CXL, it's going to spread all over the place as well. So you need to tightly couple the controllers with accelerators, right? And they all belong together. And together, we bring the portfolio to make it happen.

The other part of it is that memory is no longer about moving bits around the controller, right? Talk about data integrity. So there's a lot of encryption technology, signal processing, I/O bandwidths, the mixed-signal IP is all common. So we get the, what I call, the technology

synergy.  And therefore, the R&D synergy we need to, for both companies combined together.

So we should be able to have synergies in the OpEx.  We still are very, very, what I call, bullish that we can acquire the synergies that we told you all about.  And yes, the revenues of the combined companies have come down.  And – but it just delays, what I call, the benefits of the acquisition accordingly by a year or so.  But the basic rationale has not changed at all.  So I believe it's a very strategic asset for the company.

41.     On June 7, 2023, MaxLinear filed with the SEC on a Form 425 an excerpt of a transcript that reflected the exchange in ¶¶39-40 above in order to update the information previously disseminated by MaxLinear concerning the Merger in the Joint Proxy/Prospectus.

42.     On June 28, 2023, MaxLinear filed with the SEC a Form 8-K, signed by defendant Litchfield, which represented that MaxLinear was still seeking to complete the Merger, stating in part as follows:

As previously disclosed, on May 5, 2022, MaxLinear, Inc., a Delaware corporation ("MaxLinear") entered into an Agreement and Plan of Merger (the "Merger Agreement") with Silicon Motion Technology Corporation, an exempted company with limited liability incorporated under the law of the Cayman Islands ("Silicon Motion") and Shark Merger Sub, an exempted company with limited liability incorporated under the law of the Cayman Islands and a wholly-owned subsidiary of MaxLinear ("Merger Sub"), pursuant to which, on the terms and subject to the conditions set forth therein, Merger Sub will merge with and into Silicon Motion (the "Merger"), with Silicon Motion surviving the Merger as a wholly-owned subsidiary of MaxLinear.

The completion of the Merger is conditioned upon, among other things, the expiration or termination of the waiting period applicable to the consummation of the Merger under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended (the "HSR Act" and, such waiting period, the "HSR Waiting Period").  MaxLinear and Silicon Motion previously filed under the HSR Act, and the HSR Waiting Period expired at 11:59 p.m. ET on June 27, 2022.  However, since the Merger was not consummated by June 27, 2023, clearance under the HSR Act has expired, and on June 28, 2023, MaxLinear and Silicon Motion re-filed under the HSR Act.

43.     The statements referenced in ¶¶39-42 above were materially false and misleading when made because they failed to disclose the following adverse facts pertaining to MaxLinear's business, operations, and financial condition, which were known to or recklessly disregarded by defendants as follows:

(a)      that MaxLinear had decided it would not consummate the Merger because the economic circumstances surrounding the Merger had materially changed, including a material downturn in the semiconductor industry and rising interest rates;

(b)      that MaxLinear had determined to unilaterally terminate the Merger in the event the Merger was approved by China's SAMR;

(c)      that MaxLinear intended to argue that certain conditions in Article 6 of the Merger Agreement had not been satisfied as required by May 5, 2023 (*i.e.*, before the Class Period) as a basis to terminate the Merger; and

(d)      that, as a result of (a)-(c) above, defendants had materially misrepresented the viability of the Merger, the purported benefits of the Merger, and the likelihood that the Merger would be consummated.

44.     On July 26, 2023, regulatory approval for the Merger was granted by China's SAMR.  The price of Silicon Motion ADSs nearly doubled from the prior day's close of $52.20 per ADS to an intraday high of $95.33 per ADS on July 26, 2023.

45.     Near the close of trading on July 26, 2023, MaxLinear shocked the market by announcing in a press release, as described in a Form 8-K filed with the SEC that day, that MaxLinear was unilaterally terminating the Merger, stating in part as follows:

> MaxLinear gave notice that it is relieved of its obligation to close the transaction because, among other reasons, (i) certain conditions to closing set forth in the Merger Agreement are not satisfied and are incapable of being satisfied, (ii) Silicon Motion has suffered a Material Adverse Effect that is continuing, (iii) Silicon Motion is in material breach of representations, warranties, covenants, and agreements in the Merger Agreement that give rise to the  right of the Company to terminate, and (iv) in any event, the First Extended Outside Date has passed and was not automatically extended because certain conditions in Article 6 of the Merger Agreement were not satisfied or waived as of May 5, 2023.

46.     Tellingly, MaxLinear provided no factual details regarding the purported breaches.  Defendants continued to refuse to do so on a conference call that MaxLinear held after market hours that same day, with defendant Litchfield simply

commenting: "As you saw from our press release, we have exercised our contractual right to terminate the merger agreement.  Please note that we do not intend to share any further detail on this matter at this time, and our call today will be focused primarily on our quarterly results."

47.     Prior to the market's open on July 27, 2023, Silicon Motion issued a press release repudiating MaxLinear's purported reasons for the termination, which stated in part as follows:

> Silicon Motion and MaxLinear, Inc. ("MaxLinear") received antitrust approval from the State Administration for Market Regulation in the People's Republic of China ("SAMR Approval") in relation to the proposed merger between Silicon Motion and MaxLinear (the "Merger").  After receiving SAMR Approval, Silicon Motion received a notice of purported termination of the Merger from MaxLinear, and Silicon Motion issued the following statement in response:
>
> "MaxLinear's eleventh-hour purported termination of its merger agreement with Silicon Motion is invalid and reflects a repudiation of MaxLinear's obligations rather than any failure of Silicon Motion's conditions to closing. In the 15 months since the signing of the merger agreement between the parties, Silicon Motion worked cooperatively with MaxLinear to obtain regulatory approvals for the merger, Silicon Motion complied with its obligations under the agreement and Silicon Motion has not suffered a material adverse effect.  Silicon Motion *expects MaxLinear to abide by its obligation under the merger agreement* and intends to vigorously enforce its rights under the merger agreement."

(Emphasis in original.)

48.     In response to the news, between the market open on July 26, 2023 and the market close on July 27, 2023, the price of Silicon Motion ADS declined from $94.20 per ADS to $52.51 per ADS, representing a decline of more than $41 per ADS (or 44%).

49.     On August 7, 2023, Silicon Motion issued another press release in which it categorically rejected MaxLinear's purported termination of the Merger Agreement, and the assertions made by MaxLinear in its notice letter of July 26, 2023.  Silicon Motion further stated that it would vigorously pursue its remedies and reserved all its

- 15 -

rights, including, but not limited to, the right to hold MaxLinear liable for substantial damages.

50.     The press release annexed Silicon Motion's notice to MaxLinear concerning the termination, which was written by Wallace Kou, Silicon Motion's CEO, to defendant Litchfield and stated in part as follows:

> I write on behalf of Silicon Motion Technology Corporation ("Silicon Motion" or the "Company") in response to your July 26, 2023 letter in which MaxLinear, Inc. ("MaxLinear") purports to terminate the Agreement and Plan of Merger dated as of May 5, 2022 by and among Silicon Motion, MaxLinear, and Shark Merger Sub (the "Agreement" and the merger contemplated therein the "Transaction").

> MaxLinear's supposed grounds for terminating the Agreement are baseless and sheer fiction.  It is obvious that it has manufactured excuses to try to get out of its binding agreement.

> MaxLinear's wrongful termination of the Agreement is a Willful and Material Breach.

> Additionally, MaxLinear's failure to close by August 7, 2023, will constitute a separate Willful and Material breach of its obligations under the Agreement to close by August 7, 2023.

> These Willful and Material breaches of the Agreement entitle Silicon Motion to, among other things, substantial damages.

> It is significant that your letter does not provide the facts to support the claims that Silicon Motion breached the hodgepodge of sections that your letter cites.

> As you are aware, changes in the general economy or the microchip industry do not give MaxLinear an excuse to walk away from the binding Agreement.

> Moreover, the fact that in the nearly fifteen months since the parties signed the Agreement, MaxLinear did not notify Silicon Motion of its purported breaches is the clearest admission that there are none, and that you know that.

> This is not an exhaustive list of the reasons why MaxLinear's purported termination of the Agreement under Sections 7.1(g) and 7.1(d) of the Agreement is utterly baseless.

> ***

> Silicon Motion will vigorously pursue its remedies, and reserves all rights under the Agreement and otherwise, including but not limited to the right to hold MaxLinear liable for substantial damages.

(Footnote omitted.)

- 16 -

51.     Prior to the market's open on August 16, 2023, Silicon Motion followed up with another press release indicating it had terminated the Merger Agreement with MaxLinear and intended to pursue substantial damages in excess of the agreement's termination fee by proceeding with arbitration in the Singapore International Arbitration Centre, which stated in part as follows:

Silicon Motion Technology Corporation ("Silicon Motion" or the "Company") today issued a written notice to MaxLinear, Inc. ("MaxLinear"), terminating the Agreement and Plan of Merger between the parties dated as of May 5, 2022 (the "Merger Agreement").

Silicon Motion's position is that MaxLinear's Willful and Material Breaches (as such term is defined in the Merger Agreement) of the Merger Agreement prevented the merger from being completed by August 7, 2023 (the "Outside Date"). Silicon Motion reserves all of its contractual, legal, equitable, and other rights under the Merger Agreement and otherwise, including but not limited to the right to hold MaxLinear liable for substantial money damages, well in excess of the termination fee as provided in the Merger Agreement, suffered by Silicon Motion as a result of MaxLinear's Willful and Material Breaches of the Merger Agreement.

Pursuant to Section 7.1(d) of the Merger Agreement, the Company has the right to terminate the Merger Agreement if the completion of the merger contemplated by the Merger Agreement (the "Merger") did not occur on or before the "Outside Date".

Tim Gardner, partner of Weil, Gotshal & Manges LLP, counsel to the Company, commented as follows:

"MaxLinear's purported termination of its Merger Agreement with Silicon Motion will be the subject of an arbitration for substantial damages in the Singapore International Arbitration Centre, as provided under the parties' agreement. MaxLinear's professed reason for terminating the agreement – that Silicon Motion suffered a Material Adverse Effect ("MAE") – is a pretext and has been rejected in case after case under Delaware law, which governs the MAE issue, where buyers have sought to back out of merger agreements at the eleventh hour. The damages Silicon Motion will seek to recover far exceed the termination fee."

52.     In response to this news, the price of Silicon Motion ADSs closed down $3.57 per ADS on August 16, 2023, or more than 6%, from the prior day's close of $58.01 on higher than average volume.

53.     As a result of defendants' wrongful acts and omissions, and the precipitous declines in the market value of Silicon Motion ADSs, plaintiff and other

1  Class members have suffered significant losses and damages for which they seek
2  redress through this action.

### ADDITIONAL SCIENTER ALLEGATIONS

4  54.   As alleged herein, defendants acted with scienter in that defendants
5  knew, or recklessly disregarded, that the public documents and statements they issued
6  and disseminated to the investing public in the name of MaxLinear, or in their own
7  name, during the Class Period were materially false and misleading.  Defendants
8  knowingly and substantially participated or acquiesced in the issuance or
9  dissemination of such statements and documents as primary violations of the federal
10 securities laws.  Defendants, by virtue of their receipt of information reflecting the
11 true facts regarding MaxLinear and the Merger, and their control over and/or receipt
12 and/or modification of MaxLinear's materially false and misleading statements, were
13 active and culpable participants in the fraudulent scheme alleged herein.

14 55.   Defendants knew and recklessly disregarded the false and misleading
15 nature of the information they caused to be disseminated to the investing public.  The
16 fraudulent scheme described herein could not have been perpetuated during the Class
17 Period without the knowledge and complicity of, or at least the reckless disregard by,
18 personnel at the highest levels of MaxLinear, including the Individual Defendants.

19 56.   The Individual Defendants, because of their positions with MaxLinear,
20 controlled the contents of MaxLinear's public statements during the Class Period and
21 were intimately involved in negotiating, evaluating, consummating, and ultimately
22 terminating the Merger.  The Individual Defendants were each provided with or had
23 access to the information alleged herein to be false and misleading prior to or shortly
24 after its issuance and had the ability and opportunity to prevent its issuance or cause it
25 to be corrected.  Because of their positions and access to material, non-public
26 information, the Individual Defendants knew or recklessly disregarded that the
27 adverse facts specified herein had not been disclosed to and were being concealed
28

1 from the public and that the positive representations that were being made were false
2 and misleading.

3      57.    A number of additional facts support plaintiff's allegations that
4 defendants had fraudulently concealed MaxLinear's determinations about the
5 Merger's economics and had decided to terminate the agreement long before the truth
6 was revealed.

7      58.    First, MaxLinear's notice of termination of the Merger specifically cites a
8 purported failure by Silicon Motion to satisfy certain conditions by May 5, 2023 – a
9 date which preceded the Class Period.

10      59.    Second, the decision to terminate the Merger, a decision which required
11 the approval of MaxLinear's Board, was announced almost immediately after SAMR
12 granted approval of the Merger.  The timing of the announcement further confirms
13 that the decision to terminate the Merger was made long before by MaxLinear and its
14 management.

15      60.    Third, MaxLinear's steadfast refusal to provide details concerning Silicon
16 Motion's purported breaches is strongly indicative that the purported breaches are
17 pretextual and merely an excuse for repudiating a transaction that MaxLinear had
18 already decided was too costly for the Company to consummate.

19      61.    Fourth, MaxLinear had a strong financial incentive to terminate the
20 Merger Agreement as analysts had speculated that the deal was no longer in
21 MaxLinear's economic interests, such that breaching the agreement and paying a
22 penalty were viewed as the more favorable option.

23      62.    Fifth, Silicon Motion's response to MaxLinear's decision to terminate the
24 Merger Agreement corroborates the pretextual nature of MaxLinear's decision to
25 terminate the agreement.

26      63.    Sixth, MaxLinear's failure to previously provide Silicon Motion with
27 written notice of Silicon Motion's purported breaches per the terms of the Merger
28 Agreement further corroborates that MaxLinear's assertions are pretextual.

**APPLICATION OF PRESUMPTION OF RELIANCE:**
**FRAUD ON THE MARKET**

64.     At all relevant times, the market for Silicon Motion ADSs was an efficient market for the following reasons, among others:

(a)     Silicon Motion ADSs met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     according to Silicon Motion's Form 20-F for the fiscal year ended December 31, 2022, Silicon Motion had more than 132 million ordinary shares outstanding as of December 31, 2022, which corresponds with approximately 33 million ADSs;

(c)     as regulated issuers, MaxLinear and Silicon Motion filed periodic public reports with the SEC;

(d)     MaxLinear and Silicon Motion regularly communicated with public investors via established market communication mechanisms, including the regular dissemination of press releases on national circuits of major newswire services, the internet, and other wide-ranging public disclosures; and

(e)     unexpected material news about Silicon Motion was rapidly reflected in and incorporated into the price for Silicon Motion ADSs during the Class Period.

65.     As a result of the foregoing, the market for Silicon Motion ADSs promptly digested current information regarding Silicon Motion from publicly available sources and reflected such information in the price of Silicon Motion ADSs. Under these circumstances, all purchasers of Silicon Motion ADSs during the Class Period suffered similar injury through their purchases of Silicon Motion ADSs at artificially inflated prices, and a presumption of reliance applies.

66.     A presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens v. United States*, 406 U.S. 128

1   (1972), because plaintiff's claims are based, in significant part, on defendants'
2   material omissions.

3                **LOSS CAUSATION/ECONOMIC LOSS**

4        67.    During the Class Period, as detailed herein, defendants made false and
5   misleading statements and engaged in a scheme to deceive the market and a course of
6   conduct that artificially inflated the price of Silicon Motion ADSs and operated as a
7   fraud or deceit on Class Period purchasers of Silicon Motion ADSs by
8   misrepresenting the value of Silicon Motion's business and prospects by concealing
9   MaxLinear's conclusions about the Merger and its decision to terminate the Merger
10  Agreement.   As defendants' misrepresentations and fraudulent conduct became
11  apparent to the market, the price of Silicon Motion ADSs fell precipitously as the
12  prior artificial inflation came out of the ADSs' price.  As a result of their purchases of
13  Silicon Motion ADSs during the Class Period, plaintiff and other members of the
14  Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

15               **CLASS ACTION ALLEGATIONS**

16       68.    Plaintiff brings this action as a class action pursuant to Federal Rule of
17  Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all purchasers of
18  Silicon Motion ADSs during the Class Period (the "Class").  Excluded from the Class
19  are defendants, the officers and directors of MaxLinear and Silicon Motion, at all
20  relevant times, members of their immediate families, and their legal representatives,
21  heirs, successors, or assigns, and any entity in which defendants have or had a
22  controlling interest.

23       69.    The members of the Class are so numerous that joinder of all members is
24  impracticable.  Throughout the Class Period, Silicon Motion ADSs were actively
25  traded on the NASDAQ.  While the exact number of Class members is unknown to
26  plaintiff at this time and can only be ascertained through appropriate discovery,
27  plaintiff believes that there could be hundreds or thousands of members in the
28  proposed Class.  Record owners and other members of the Class may be identified

1    from records maintained by Silicon Motion or its transfer agent or the depositary bank

2    for the ADSs and may be notified of the pendency of this action by mail, using the

3    form of notice similar to that customarily used in securities class actions.

4         70.    Plaintiff's claims are typical of the claims of the members of the Class as

5    all members of the Class are similarly affected by defendants' wrongful statements

6    and conduct in violation of federal law that is complained of herein.

7         71.    Plaintiff will fairly and adequately protect the interests of the members of

8    the Class and has retained counsel competent and experienced in class and securities

9    litigation.

10        72.    Common questions of law and fact exist as to all members of the Class

11   and predominate over any questions solely affecting individual members of the Class.

12   Among the questions of law and fact common to the Class are:

13             (a)    whether the Exchange Act was violated by defendants as alleged

14   herein;

15             (b)    whether statements made by defendants misrepresented material

16   facts about the business, operations, and prospects of Silicon Motion;

17             (c)    whether defendants acted with scienter; and

18             (d)    to what extent the members of the Class have sustained damages

19   and the proper measure of damages.

20        73.    A class action is superior to all other available methods for the fair and

21   efficient adjudication of this controversy since joinder of all members is

22   impracticable.  Furthermore, as the damages suffered by individual Class members

23   may be relatively small, the expense and burden of individual litigation make it

24   impossible for members of the Class to individually redress the wrongs done to them.

25   There will be no difficulty in the management of this action as a class action.

26

27

28

## COUNT I

### For Violation of §10(b) of the Exchange Act and SEC Rule 10b-5
### Against All Defendants

74.     Plaintiff incorporates ¶¶1-73 by reference.

75.     During the Class Period, defendants knowingly or recklessly failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

76.     Defendants violated §10(b) of the Exchange Act and SEC Rule 10b-5 in that they:

(a)     employed devices, schemes, and artifices to defraud;

(b)     made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Silicon Motion ADSs during the Class Period.

77.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Silicon Motion ADSs. Plaintiff and the Class would not have purchased Silicon Motion ADSs at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' false and misleading statements and fraudulent scheme.

## COUNT II

### For Violation of §20(a) of the Exchange Act
### Against All Defendants

78.     Plaintiff incorporates ¶¶1-77 by reference.

79.     Defendants acted as controlling persons of MaxLinear within the meaning of §20(a) of the Exchange Act. By reason of their positions with MaxLinear

- 23 -

1  and/or ownership of MaxLinear stock, the Individual Defendants had the power and

2  authority to cause MaxLinear to engage in the wrongful conduct complained of

3  herein. MaxLinear controlled the Individual Defendants and all of its employees. By

4  reason of such conduct, defendants are liable pursuant to §20(a) of the Exchange Act.

### PRAYER FOR RELIEF

6  WHEREFORE, plaintiff prays for relief and judgment, as follows:

7  A.   Determining that this action is a proper class action, designating plaintiff

8  as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the

9  Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

10  B.   Awarding compensatory damages in favor of plaintiff and the other Class

11  members against all defendants, jointly and severally, for all damages sustained as a

12  result of defendants' wrongdoing, in an amount to be proven at trial, including interest

13  thereon;

14  C.   Awarding plaintiff and the Class their reasonable costs and expenses

15  incurred in this action, including counsel fees and expert fees; and

16  D.   Awarding such equitable, injunctive, or other relief as deemed

17  appropriate by the Court.

### JURY DEMAND

19  Plaintiff demands a trial by jury.

20  DATED: August 31, 2023                ROBBINS GELLER RUDMAN
                                                        & DOWD LLP
21                                                DARREN J. ROBBINS
                                                        BRIAN E. COCHRAN
22

23                                                        s/ Darren J. Robbins

24                                                _____
                                                        DARREN J. ROBBINS

25

26

27

28

- 24 -

655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
bcochran@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
RICHARD W. GONNELLO
420 Lexington Avenue, Suite 1832
New York, NY  10170
Telephone:  212/432-5100
rgonnello@rgrdlaw.com

ENTWISTLE & CAPPUCCI LLP
VINCENT R. CAPPUCCI
ROBERT N. CAPPUCCI
230 Park Avenue, 3rd Floor
New York, New York 10169
Telephone: 212/894/7200
212/894-7272 (fax)
vcappucci@entwistle-law.com
rcappucci@entwistle-law.com

Attorneys for Plaintiff

## **CERTIFICATION**

I, Jonathon Hickey, on behalf of Water Island Event-Driven Fund, hereby certify, as to the claims asserted under the federal securities laws in the Class Action Complaint (the "Complaint"), that:

1.    I am the Chief Operating Officer of Water Island Capital, LLC, the investment advisor to Water Island Event-Driven Fund.  I have reviewed the Complaint to be filed in this action and have authorized its filing by counsel.

2.    Water Island Event-Driven Fund did not acquire any of the securities that are the subject of this action at the direction of its counsel in order to participate in this action or any other litigation under the federal securities laws.

3.    Water Island Event-Driven Fund is willing to serve as a Lead Plaintiff in this action and recognizes its duty as such to act on behalf of class members in monitoring and directing the action, and, if necessary, testifying at deposition and trial.

4.    Water Island Event-Driven Fund will not accept any payment for serving as a representative party on behalf of the class beyond its *pro rata* share of any recovery, except reasonable costs and expenses, such as lost wages and travel expenses, directly related to the class representation, as ordered or approved by the Court.

5.    Water Island Event-Driven Fund has not served or sought to serve as a representative party for a class in any action filed under the federal securities laws within the three-year period prior to the date of this Certification except in *Sayce v. Forescout Technologies, Inc.*, No. 3:20-cv-00076-SI (N. D. Cal. Sept. 28, 2020), *In re Pattern Energy Group Inc. Securities Litigation*, No. 20-cv-275 (MN) (JLH) (D. Del. Mar. 6, 2020), *The Arbitrage Fund v. The Toronto-Dominion Bank*, No. 1:23-cv-02763-RBK (D.N.J. July 21, 2023) and *Water Island Merger Arbitrage Institutional Commingled Master Fund, LP v. Cornerstone Building Brands, Inc.*, No. 1:23-cv-00701-CFC (D. Del. Aug. 28, 2023).

6.    Water Island Event-Driven Fund's transactions during the relevant period in Silicon Motion Technology Corporation securities that are the subject of this action are reflected in Schedule A hereto.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this <u>30</u> day of August 2023

_____
Water Island Event-Driven Fund
By:  Jonathon Hickey
Chief Operating Officer of Water Island
Capital, LLC, investment advisor to Water
Island Event-Driven Fund

**SCHEDULE A**

**SECURITIES TRANSACTIONS**

**ADR**

| Date Acquired | Amount of Shares Acquired | Price |
|---|---|---|
| 07/26/2023 | 3,950 | $92.92 |
| 07/26/2023 | 3,886 | $71.10 |

| Date Disposed | Amount of Shares Disposed | Price |
|---|---|---|
| 07/19/2023 | 1,510 | $57.58 |

Prices listed are rounded up to two decimal places.

*Opening position of 33,228 shares.