UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| WATER ISLAND EVENT-DRIVEN FUND, on behalf of itself and all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>MAXLINEAR, INC.; et al.,<br><br>        Defendants. | Case No.: 23-cv-1607-LAB-VET<br><br>**ORDER APPOINTING LEAD PLAINTIFF AND APPROVING SELECTION OF LEAD COUNSEL [Dkt. 14, 15]** |
|---|---|

  On August 31, 2023, Water Island Event-Driven Fund ("Water Island") filed a putative class action lawsuit alleging violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Securities Exchange Commission Rule 10b-5. (Dkt. 1, Compl.). This action was brought on behalf of purchasers of Silicon Motion Technology Corporation's ("SIMO") American Depositary Shares ("ADS") from June 6, 2023 through July 26, 2023 (the "Class Period"), against Maxlinear, Inc. and two executive officers: (1) Chairman, President, and Chief Executive Officer Kishore Seendripu and (2) Chief Financial Officer and Chief Corporate Strategy Officer Steven Litchfield (collectively, "Defendants"). (*Id.*). Before the Court are two competing motions to appoint Lead Plaintiff and approve the selection of Lead Counsel. (Dkt. 14, 15). Movants HBK

Master Fund L.P. and HBK Merger Strategies Master Fund L.P. (collectively, "HBK") and movants Westchester Funds[1]; Alpine Funds[2]; Atlas Fund[3]; and Kryger Funds[4] (collectively, the "Institutional Investors") allege that they should be named Lead Plaintiff and the Court should appoint their choice of counsel.[5] Having considered the parties' briefing, the Court finds the motions suitable for resolution without oral argument. The hearing set for January 8, 2024, at 11:15 a.m., in Courtroom 14A is **VACATED** pursuant to Civil Local Rule 7.1(d)(1). The Court **GRANTS** the Institutional Investors' motion for Appointment of Lead Plaintiff and Selection of Lead Counsel, (Dkt. 15), and **DENIES** HBK's competing motion, (Dkt. 14).

//

//

---

[1] The Westchester Funds consists of six related private investment funds: (1) JNL/Westchester Capital Event Driven Fund; (2) The Merger Fund®; (3) The Merger Fund® VL; (4) Virtus Westchester Event-Driven Fund, a series of Virtus Event Opportunities Trust; (5) Westchester Capital Master Trust; and (6) The Westchester Merger Arbitrage Strategy Sleeve of the JNL Multi-Manager Alternative Fund.

[2] The Alpine Funds consists of nine related private investment funds: (1) Alpine Associates, A Limited Partnership; (2) Alpine Dedicated, L.P.; (3) Alpine Heritage II, L.P.; (4) Alpine Heritage Japan Trust; (5) Alpine Heritage Offshore Fund Ltd.; (6) Alpine Heritage, L.P.; (7) Alpine Institutional, L.P.; (8) Alpine Merger Growth, L.P.; and (9) Alpine Partners, L.P.

[3] The Atlas Fund is Atlas Diversified Master Fund, Ltd.

[4] The Kryger Funds consists of two related private investment funds: (1) Kryger Capital Ltd. – Event Fund and (2) Kryger Capital Ltd. – Enhanced Fund.

[5] Water Island doesn't appear to still seek appointment as Lead Plaintiff because it supports the Institutional Investors' motion for appointment as Lead Plaintiff. (Dkt. 44 at 7 n.11). The Court also finds that Water Island doesn't have the largest financial interest compared to HBK and the Institutional Investors. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). The Court **DENIES** Water Island's request to be designated as Lead Plaintiff as requested in the Complaint and will focus its attention on HBK and the Institutional Investors.

# I. ANALYSIS

## A. Motion to Appoint Lead Plaintiff

The Private Securities Litigation Reform Act of 1995 ("PSLRA") dictates the process for determining lead plaintiff in a securities class action brought under the Exchange Act as well as the Securities Act of 1933. 15 U.S.C. § 78u-4(a)(3)(B); 15 U.S.C. § 77z-1(a)(3)(B); *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). The district court "shall appoint as lead plaintiff the member or members of the purported class that the court determines to be the most capable of adequately representing the interest of the class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). "[A] 'group of persons' can collectively serve as a lead plaintiff." *In re Cavanaugh*, 306 F.3d at 731 n.8. The PSLRA creates a rebuttable presumption that the most adequate plaintiff is the "person or group of persons" that meet the following three requirements: (1) has filed the complaint or brought the motion for appointment of lead counsel in response to the publication of notice, (2) has the "largest financial interest" in the relief sought by the class, and (3) otherwise satisfies the requirements of Federal Rule of Civil Procedure 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)–(cc). The presumption may be rebutted only upon proof that the presumptive lead plaintiff: (1) "will not fairly and adequately protect the interests of the class" or (2) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u-4(a)(3)(B)(iii)(II)(aa)–(bb).

By its terms, the PSLRA "provides a simple three-step process for identifying the lead plaintiff" in a private securities class action litigation. *In re Cavanaugh*, 306 F.3d at 729. "The first step consists of publicizing the pendency of the action, the claims made and the purported class period." *Id.* At the second step, "the district court must consider the losses allegedly suffered by the various plaintiffs," and select as the "presumptively most adequate plaintiff . . . the one who has the largest financial interest in the relief sought by the class and otherwise satisfied the

requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.* at 729–30 (internal quotations omitted). "[T]he *only* basis on which a court may compare plaintiffs competing to serve as lead is the size of their financial stake in the controversy." *Id.* at 732 (emphasis in original). Once the individual or group with the largest financial interest is identified, the court "must then focus its attention on *that* plaintiff" and determine whether they meet the requirements of Rule 23. *Id.* at 730 (emphasis in original). If the individual or group with the highest financial stake in the litigation does meet the requirements of Rule 23, they must be the presumptive lead plaintiff. *Id.* Finally, at the third step, the district court "give[s] other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Id.* If the court determines that the presumptive lead plaintiff doesn't meet the typicality or adequacy requirement, then it must return to step two, select a new presumptive lead plaintiff, and again allow the other plaintiffs to rebut the new presumptive lead plaintiff's showing. *Id.* at 731.

### 1. Notice and Procedural Requirements

Pursuant to the PSLRA, a plaintiff who files a securities class action litigation must provide notice to class members via publication in a widely-circulated national business-oriented publication or wire service within twenty days of filing the complaint. 15 U.S.C. § 78u-4(a)(3)(A)(i). The notice must: (1) advise class members of the pendency of the action, the claims asserted therein, and the purported class period; and (2) inform potential class members that, within sixty days of the date on which notice was published, any members of the purported class may move the court to serve as lead plaintiff in the purported class. *Id.* § 78u-4(a)(3)(A)(i)(I)–(II). In order to be considered for lead plaintiff status, each proposed lead plaintiff must, within sixty days of published notice of the pendency of the action, move to be appointed lead plaintiff. *See id.* § 78u-4(a)(3)(A)(i)(II).

This action was filed on August 31, 2023. (Compl.). Notice was published in

*Business Wire* on September 1, 2023, by the law firms Entwistle & Cappucci LLP ("E&C) and Robbins Geller Rudman & Dowd LLP. (Dkt. 15-6). The notice was timely published, lists the claims and the class period, and advises putative class members that they had sixty days from the date of the notice to file a motion to seek appointment as lead plaintiff through counsel of their choice in the lawsuit. *See* 15 U.S.C. § 78u-4(a)(3)(A). On October 31, 2023, HBK and the Institutional Investors filed their motions for appointment as lead plaintiff within the allotted period. (Dkt. 14, 15). Notice is proper and both movants have satisfied the statutory procedural requirements for moving to be appointed as Lead Plaintiff.

### 2. Largest Financial Interest

Turning to step two, courts must determine the most adequate lead plaintiff who is the class member with "the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Courts typically consider the *Lax-Olsten* factors, which include: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period." *Peters v. Twist Bioscience Corp.*, No. 22-cv-08168-EJD, 2023 WL 4849431, at *3 (N.D. Cal. July 28, 2023) (quoting *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998)). The greatest emphasis is on the approximate losses suffered. *Xu v. FibroGen, Inc.*, No. 21-cv-02623-EMC, 2021 WL 3861454, at *4 (N.D. Cal. Aug. 30, 2021) (quoting *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, No. 11-CV-04003-LHK, 2012 WL 78780, at *4 (N.D. Cal. Jan. 9, 2012)). "The PSLRA does not specify how the court should calculate 'largest financial interest,' but most courts look to the largest loss from class period investments when sales are matched to purchases on a Last-In-First-Out ('LIFO') basis." *See, e.g.*, *Wasa Med. Holdings v. Sorrento Therapeutics, Inc.*, No. 20-cv-0966-AJB-DEB, 2021 WL 533518, at *2 (S.D. Cal. Feb. 12, 2021) (citing *Staublein v. Acadia Pharm., Inc.*, No. 18-cv-1647-AJB-BGS, 2019 WL 927756, at

*2 (S.D. Cal. Feb. 26, 2019) (analyzing movant losses on a LIFO basis)).

After review of the competing movants' briefing, the alleged losses of each competing movant, using the LIFO basis, are as follows: HBK is $29,361,850.10, (Dkt. 14-2); Westchester Funds is $25,764,602.98, (Dkt. 15-4 at 6); Alpine Funds is $8,004,765.00, (*id.* at 15); Atlas Fund is $16,877,366.13, (*id.* at 27); and Kryger Funds is $7,501,579.76, (*id.* at 29). As a group the Institutional Investors have an aggregate loss of $58,148,313.87. (*Id.*). Based on the briefing submitted, the Institutional Investors have the largest aggregate loss, which HBK doesn't contest.

HBK recognizes that the Ninth Circuit hasn't addressed whether groups can satisfy the "largest financial interest" by aggregating losses, but challenges whether the four investment funds that make up the Institutional Investors should be aggregated when they have no meaningful pre-existing relationship. (Dkt. 23 at 3, 6–14). In support of this argument, HBK cites cases where courts in the Ninth Circuit have refused to appoint as lead plaintiff groups of unrelated individuals. (*Id.* at 6). In response, the Institutional Investors argue that even if they aren't allowed to combine all their losses, the Westchester Funds has the largest loss by itself using the LIFO basis ($25,764,602 for Westchester Funds compared to $25,615,529 for HBK), which is why the Institutional Investors should be selected as Lead Plaintiff. (Dkt. 27 at 10–11; 44 at 4).

According to the Institutional Investors, HBK's loss calculation of $29,361,850.10 is inaccurate and doesn't follow any calculation adopted in the Ninth Circuit. (Dkt. 27 at 2, 5–8). HBK's "true" loss using the LIFO basis is $25,615,529. (*Id.* at 8). The Court agrees HBK's loss calculation is inaccurate. Prior to the Class Period, HBK already held 450,000 shares. (Dkt. 14-2). By July 19, 2023, HBK had sold more shares than it purchased during the Class Period, and continued to have more shares sold until it made multiple purchases on July 26, 2023. (*Id.*) HBK failed "to offset its claimed loss with gains for [SIMO] securities purchased *before* the Class Period and sold *during* the Class Period." *Ferreira v.*

*Funko, Inc.*, No. 20-cv-02319-VAP-PJWx, 2020 WL 3246328, at *7 (C.D. Cal. June 11, 2020) (emphasis in original); *see also Weisz v. Calpine Corp.*, No. 02-CV-1200, 2002 WL 32818827, at *7 (N.D. Cal. Aug. 19, 2002) (finding a net seller "may have actually profited, not suffered losses, as a result of the allegedly artificially inflated stock price"); *In re Network Assoc. Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) ("[T]he first step is to subtract the number of shares sold by a candidate from those purchased during the class period.").

HBK claims even if Westchester Funds' calculations are true, the difference between Westchester Funds and HBK is miniscule. HBK argues the difference of 0.58% constitutes a "virtual tie" with Westchester Funds, (Dkt. 42 at 2), but other courts "have concluded that any financial difference is meaningful in determining lead plaintiff," *Hessefort v. Super Micro Computer, Inc.*, 317 F. Supp. 3d 1056, 1060 (N.D. Cal. 2018) (collecting cases). Westchester Funds has the largest loss, so it alone qualifies as the presumptive leader, and the Court doesn't need to address the question of whether aggregation is appropriate. *See In re Surebeam Corp. Sec. Litig.*, No. 03-cv-1721-JM-POR, 2004 WL 5159061, at *5 (S.D. Cal. Jan. 5, 2004) (finding the shareholder suffering the largest loss within any of the groups is Spear Capital, a member of FMC Pension Group, so it "makes no practical difference if Spear Capital chooses to associate with other shareholders in order to further distance itself from the next proposed lead plaintiff").

Nevertheless, turning to the issue of aggregation, the Court finds aggregation of the Institutional Investors is appropriate. Courts have declined to aggregate losses of a group of individuals when there is no pre-existing relationship between the group members. *See, e.g., Wasa Med. Holdings*, 2021 WL 533518, at *5. However, the lack of a pre-existing relationship isn't dispositive, provided the members are able to actively and cohesively represent the class. *See In re Versata, Inc., Sec. Litig.*, Nos. C 01-1439 SI; C 01-1559 SI; C 01-1703 SI; C 01-1731 SI; C 01-1786 SI, 2001 WL 34012374, at *5–6 (N.D. Cal. Aug. 20, 2001);

*Sabbagh v. Cell Therapeutics, Inc.*, Nos. C10-414MJP; C10-480MJP; C10-559MJP, 2010 WL 3064427, at *6 (W.D. Wash. Aug. 2, 2010).

Here, there's at least two funds that have a pre-existing relationship—Westchester Funds and Alpine Funds—because they have been selected as co-lead plaintiffs in another securities class action, *In re Toronto-Dominion Bank/First Horizon Corp. Sec. Litig.*, No. 23-cv-2763 (D.N.J.), ECF Nos. 24, 25. (Dkt. 15-5 ¶¶ 3, 6). While this may be a suspected "arranged marriage" between the two funds, there is no conclusive evidence suggesting both funds have agreed to move for lead plaintiff together prior to discussing the merits of the case and can't work together. *Hedick v. Kraft Heinz Co.*, Nos. 19-cv-1339; 19-cv-1845; 19-cv-2807, 2019 WL 4958238, at *7 (N.D. Ill. Oct. 8, 2019) (finding nothing suggests the two institutional investors that have previously worked together as co-lead plaintiffs can't operate effectively as a unit). In fact, in the initial joint declaration, the Institutional Investors declare, prior to seeking appointment as Lead Plaintiff, they had a conference call to discuss the merits of the claims, how to best represent investors, and the importance of making joint decisions. (Dkt. 15-5 ¶¶ 16, 18–19). If the Court only considered the losses of Westchester Funds and Alpine Funds, they together have an aggregated LIFO loss of $32,890,367.98,[6] which exceeds even HBK's loss calculation of $29,361,850.10.

Although the Court needn't address the aggregation of the other two funds because Westchester Funds and Alpine Funds together have a greater aggregated loss than HBK, *see In re Surebeam Corp. Sec. Litig.*, 2004 WL 5159061, at *5, aggregation of the remaining Institutional Investors is appropriate,

---

[6] HBK argues Alpine Heritage, L.P.'s losses are inflated, (Dkt. 23 at 20), which the Institutional Investors contest, (Dkt. 44 at 9 – 10). The Court, for the purposes of calculating the aggregated loss amongst Westchester Funds and Alpine Funds, reduced the amount by $879,000 to account for this alleged miscalculation.

1 *see Xu*, 2021 WL 3861454, at *10 (finding aggregation of institutional investors was appropriate when there is a pre-litigation relationship, the investors had a conference call with counsel before filing for lead plaintiff, the investors continued to track the case and communicate with each other, and the investors' commitment to collaborate and resolve disagreements by a majority vote). As noted above, the initial joint declaration indicates that at least two Institutional Investors are acting as lead plaintiff in another securities class action, all Institutional Investors had a conference call to determine the merits of the claims, they all discuss such claims with counsel before filing a motion for Lead Plaintiff, and they all are motivated to work together to achieve the best result. (Dkt. 15-5 ¶¶ 3, 6, 16, 18–19).

HBK contends that "critically, the Investor Group says next to nothing about how it intends to prosecute this case and make litigations decisions. . . . [and] has no detail whatsoever about how the Group members will vote on decisions." (Dkt. 23 at 8). While the original joint declaration didn't indicate how the Institutional Investors intended to decide disagreements, the Institutional Investors' supplemental joint declaration addresses HBK's concerns. In the supplemental joint declaration, the Institutional Investors note that they have been closely tracking the case, will work together to come to a collective decision, and, if a consensus isn't reached, will use a weighted voting system based on the dollar value of their losses on investments. (Dkt. 44-2 ¶¶ 6, 8). The Court finds aggregation of all Institutional Investors is appropriate because "the benefit that the group would bring to the class amply outweigh any deficiencies." *Xu*, 2021 WL 3861454, at *10; *see also Knisley v. Network Assocs., Inc.*, 77 F. Supp. 2d 1111, 1115–16 (N.D. Cal. 1999) ("In enacting the PSLRA, Congress 'unequivocally expressed its preference for securities fraud litigation to be directed by large institutional investors.'") (quoting *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 548 (N.D. Tex. 1997)).

//

### 3. Rule 23's Typicality and Adequacy Requirements

In addition to possessing the largest financial interest, the PSLRA requires a proposed lead plaintiff to satisfy the requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Once a court determines which plaintiff has the largest financial interest, generally "the court must appoint that plaintiff as lead, unless it finds that [plaintiff] does not satisfy the typicality or adequacy requirements" of Rule 23(a). *In re Cavanaugh*, 306 F.3d at 732. The movant "need only make a prima facie showing of its typicality and adequacy." *Hessefort*, 317 F. Supp. 3d at 1060–61. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the name plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* at 1061 (citations omitted). "The test for adequacy is whether the class representative and his counsel 'have any conflicts of interest with other class members' and whether the class representative and his counsel will 'prosecute the action vigorously on behalf of the class.'" *Id.* (citations omitted). At step two, the process isn't adversarial, and the Rule 23 determination is based on the movant's pleadings and declarations. *In re Mersho*, 6 F.4th 891, 899 (9th Cir. 2021) (citing *In re Cavanaugh*, 306 F.3d at 730). The Institutional Investors satisfy both requirements.

First, the Institutional Investors' claims are typical of the class. The typicality requirement focuses on whether the presumptive lead plaintiff has suffered the same or similar injuries as absent class members as a result of the same conduct by the defendants and are founded on the same legal theory. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 729 (9th Cir. 2020) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), overruled on other grounds by *Wal-Mart Stores, Inc. v.*

*Dukes*, 564 U.S. 338, 338 (2011)). The Institutional Investors argue they satisfy the prima facie showing of typicality because, like all other putative class members, they purchased SIMO's ADSs during the Class Period based on "Defendants' materially false and misleading statements and/or omissions." (Dkt. 15-1 at 9). The Court finds that the Institutional Investors' claims are typical of those of the absent class members.

Second, the Institutional Investors also satisfy the adequacy requirement. This requirement focuses on whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The two primary adequacy inquiries are (1) whether there are conflicts of interest between the proposed lead plaintiff and the class and (2) whether plaintiff and counsel will vigorously fulfill their duties to the class. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). The Institutional Investors argue they've made a prima facie showing that they'll adequately and fairly represent the class because they've been substantially harmed by Defendants' misrepresentations and omissions about the merger and have a significant interest in the outcome. (Dkt. 15-1 at 9). Additionally, the firms proposed to serve as Lead Counsel, Saxena White P.A. ("Saxena") and E&C, are experienced and qualified to prosecute securities class action litigation. (*Id.* at 10; Dkt. 15-7, 15-8). There isn't evidence of an actual or potential conflict of interest between the Institutional Investors and the other class members and Saxena and E&C are experienced to represent the interests of the class. The Institutional Investors have satisfied their initial burden and qualify as the presumptive Lead Plaintiff.

    **4.  Presumption Not Rebutted**

Turning to step three, HBK has the chance to rebut the Institutional Investors' showing that they satisfy Rule 23's typicality and adequacy requirements. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *In re Cavanaugh*, 306 F.3d at 729–31. The process is adversarial and the presumption may be rebutted by proof that the presumptively

most adequate plaintiff won't fairly and adequately protect the interest of the class or is subject to unique defenses that render it unable to adequately represent the class. *In re Mersho*, 6 F.4th at 899 (citing *In re Cavanaugh*, 306 F.3d at 730; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)–(bb)). If the presumption isn't rebutted, the presumptive plaintiff must be selected as lead plaintiff. *Id.* (citing 15 U.S.C. § 78u-4(A)(3)(B)(i)).

In opposing the appointment of the Institutional Investors, HBK argues that the Institutional Investors won't adequately represent the class because (1) the appointment of more than one law firm raises potential issues in decision making and (2) "the [Institutional Investors are] an artificial amalgamation of unrelated entities." (Dkt. 23 at 11–12, 14). The Court disagrees.

First, many courts have determined that co-lead counsel would be adequate in representing the class. *See, e.g.*, *Salzman v. ImmunityBio, Inc.*, No. 23-cv-01216-GPC-WVG, 2023 WL 6305798, at *2 (S.D. Cal. Sept. 27, 2023); *Twitchell v. Enovix Corp.*, No. 23-cv-00071-SI, 2023 WL 3170044, at *9 (N.D. Cal. Apr. 28, 2023) (appointing Rolnick Kramer Sadighi LLP and The Rosen Law Firm, P.A., as co-lead counsel, and Sawyer & Labar LLP as liaison counsel). Nothing here suggests that Saxena and E&C can't work together effectively.

Second, the Institutional Investors can work together to adequately represent the class. *See Xu*, 2021 WL 3861454, at *10. As noted in the initial joint declaration, two funds—Westchester Funds and Alpine Funds—have been appointed co-lead plaintiffs in another securities class action case. (Dkt. 15-5 ¶¶ 3, 6). In addition, the Institutional Investors have indicated all Institutional Investors had a conference call to determine the merits of the claims, discussed such claims with counsel before filing a motion for Lead Plaintiff, and are motivated to work together to achieve the best result. (*Id.* ¶¶ 16, 18–19). The Institutional Investors have also been closely tracking the case and will use a weighted voting system to decide any disagreements that may arise. (Dkt. 44-2 ¶¶ 6, 8). The Institutional Investors, along

with Saxena and E&C, will be able to fairly and adequately protect the interest of the class.

HBK also argues that the Institutional Investors have trading patterns subjecting them to unique defenses, which makes them atypical to represent the class. For example, (1) Westchester Funds and Kryger Funds made their first purchase of SIMO's ADSs on the last day of the Class Period after the China Administrator granted regulatory approval, (Dkt. 23 at 15; 42 at 3) and (2) Atlas Fund was engaged in market-making activities, employed high-frequency trading strategies to invest in SIMO, and sold SIMO's ADSs after the China Administrator granted regulatory approval but before MaxLinear announced it wasn't going to merge, (Dkt. 23 at 16–18; 42 at 3).[7] The Court disagrees.

The Court first looks to Westchester Funds and Kryger Funds. It's uncontested that Westchester Funds and Kryger Funds purchased SIMO's ADSs on the last day of the Class Period. (*See* Dkt. 15-3). However, that doesn't foreclose that Westchester Funds and Kryger Funds relied on Defendants' assertion that the merger will proceed once they obtain regulatory approval, which is what each declared it did when making such purchases. (Dkt. 15-5 ¶¶ 4, 13). It follows logically to wait to purchase SIMO's ADSs after regulatory approval because that was the triggering event for the merger. This is evidenced by the largest trading volume occurring on July 26, 2023, compared to the rest of the Class Period. (Dkt. 44-3). HBK itself made numerous purchases of hundreds of thousands of SIMO's ADSs on July 26, 2023, which exceeds all other purchases it made during the Class Period. (Dkt. 14-2). While the Court recognizes that Defendants may make this argument against Westchester Funds and Kryger Funds, this doesn't make them atypical of the potential class when numerous

---

[7] HBK doesn't argue that Alpine Funds made any trades that would subject them to unique defenses. (*See* Dkt. 19).

others, including HBK, made large purchases after regulatory approval was announced. *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 649 (C.D. Cal. 1996) ("[P]laintiff's claim can still be typical even if the class members' injuries were suffered at different times.").

The Court now turns to Atlas Fund. The Court recognizes that Atlas Fund had numerous trades during the Class Period where it bought and sold the same number of shares for the same price. (*See* Dkt. 15-3). However, this isn't enough to conclude that Atlas Fund is a market maker that engaged in quantitative or high-frequency trading strategies without relying on public information, which the Institutional Investors refute because Atlas Fund isn't a registered market maker and declared that it relied on Defendants' public statements when investing in SIMO's ADSs. (Dkt. 44 at 9); *see also Twitchell*, 2023 WL 3170044, at *7. Moreover, while it may be odd to sell shares after regulatory approval was announced and prior to MaxLinear's announcement it wasn't proceeding with the merger, HBK fails to account for the numerous shares purchased by Atlas Fund on July 26, 2023. Atlas Fund sold 32,256 shares, but purchased over 523,546 shares. (Dkt. 15-3). Selling some SIMO's ADSs doesn't make Atlas Fund's purchases atypical of the class.

"HBK does not offer 'proof' that [the Institutional Investors] should be disqualified now. *Hardy v. MabVax Therapeutics Holdings*, Nos. 18-cv-01160-BAS-NLS; 18-cv-01819-BAS-NLS, 2018 WL 4252345, at *8 (S.D. Cal. Sept. 6, 2018) (citing *In re ForceField Energy Inc. Sec. Litig.*, Nos. 15 Civ. 3020(NRB); 15 Civ. 3141(NRB); 15 Civ. 3279(NRB), 2015 WL 4476345, at *5 (S.D.N.Y. July 22, 2015) ("By directing district courts to choose lead plaintiffs at the earliest stage of class litigation, Congress expressed a judgment that the benefits of appointing a high-loss plaintiff early in litigation would outweigh the costs of occasionally having to replace the lead plaintiff later on.")). The Court appoints the Institutional Investors as Lead Plaintiff in this case. *See In re Cavanaugh*, 306 F.3d at 732

(holding that absent proof that the proposed lead plaintiff with the largest financial interest doesn't satisfy the requirements of Rule 23, this plaintiff is "entitled to lead plaintiff status").

### B. Motion to Appoint Lead Counsel

The PSLRA provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). The Institutional Investors wish to appoint Saxena and E&C as Lead Counsel in this case. (Dkt. 15). On their firm resumes, Saxena and E&C have prosecuted numerous securities litigations and securities fraud class actions successfully on behalf of investors, including obtaining recoveries of millions of dollars, and have served as lead or co-lead counsel in numerous securities class action cases. (Dkt. 15-7, 15-8). The Court finds Saxena and E&C have the resources and experience to effectively manage the class litigation. Saxena and E&C are appointed as Lead Counsel. *See Cohen v. U.S. Dist. Ct. for N. Dist.* of California, 586 F.3d 703, 712 (9th Cir. 2009) ("We hold that if the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice.").

## II. CONCLUSION

The Institutional Investors' motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel is **GRANTED**, (Dkt. 15), and HBK's competing motion is **DENIED**, (Dkt. 14). Pursuant to 15 U.S.C. § 78u-4(a)(3)(B), the Institutional Investors are **APPOINTED** to serve as Lead Plaintiff. Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the Institutional Investors' selection of Saxena and E&C as Lead Counsel for the class is **APPROVED**. Within fourteen (14) days of the filing of this Order, the parties must meet and confer and propose a schedule to the Court for the filing of the amended complaint or designating the original complaint as the operative complaint, and the response to such complaint.

**IT IS FURTHER ORDERED** that:

1) Saxena and E&C will serve as Co-Lead Counsel and have the following responsibilities and duties: coordinate the briefing and argument of motions; coordinate the conduct of discovery proceedings; coordinate the examination of witnesses in depositions; coordinate the selection of counsel to act as a spokesperson at pretrial conferences; call meetings of the Institutional Investors' counsel as they deem necessary and appropriate from time to time; coordinate all settlement negotiations with counsel for Defendants; coordinate and direct the pretrial discovery proceedings, the preparation for trial, and the trial, and to delegate work responsibilities to selected counsel as may be required; and supervise any other matters concerning the prosecution, resolution, or settlement of this case.

2) No motion, request for discovery, or other pretrial proceedings should be initiated or filed by the Institutional Investors without the approval of Co-Lead Counsel, to prevent duplicative pleadings or discovery. No settlement negotiations should be conducted without the approval of Co-Lead Counsel.

3) Co-Lead Counsel have the responsibility of receiving and disseminating Court orders and notices.

**IT IS SO ORDERED**.

Dated: December 20, 2023

*Larry A. Burns*
Honorable Larry Alan Burns
United States District Judge