UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WATER ISLAND EVENT-DRIVEN FUND, on Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MAXLINEAR, INC. et al.,<br><br>Defendant. | Case No.: 23-CV-01607-CAB-VET<br><br>**ORDER GRANTING MOTION TO DISMISS WITHOUT PREJUDICE** |

This securities class-action dispute arises out of a failed merger. In its wake, Plaintiffs filed a consolidated complaint (or "Complaint") alleging violations of Sections (10)(b) and 20(a) of the Securities Exchange Act of 1934. [ECF No. 50.] At issue is Defendants' Motion to Dismiss the consolidated complaint for failure to state a claim under Rule 12(b)(6). [ECF No. 51.] In light of the Ninth Circuit's ruling in *In re: CCIV / Lucid Motors Sec. Litig.*, 110 F.4th 1181, 1187 (9th Cir. 2024) (hereinafter, "*Lucid Motors*"), the Motion is **GRANTED.**

## I. FACTUAL ALLEGATIONS

The Court takes the alleged material facts as true and construes them in the light most favorable to Plaintiffs.[1] *Stoner v. Santa Clara Cnty. Office of Educ.*, 502 F.3d 1116, 1120 (9th Cir. 2007). Defendant MaxLinear is a Delaware corporation with its principal executive offices located in Carlsbad, California. [Compl. ¶ 20.] MaxLinear provides microchips for the telecommunications industry. [*Id.*] Its stock is publicly traded on the NASDAQ under the ticker "MXL." [*Id.*] Defendant Kishore Seendripu is the co-founder of MaxLinear and, as relevant to the allegations in the consolidated complaint, served as its Chief Executive Officer. [*Id.* ¶ 21.] Defendant Steven Litchfield served as Chief Financial Officer and Chief Corporate Strategy Officer. [*Id.* ¶ 22.] Both individuals are alleged to have made, approved, or adopted false statements that caused or maintained artificial inflation in the price of Silicon Motion Technology Corporation's ("SIMO") shares. [*Id.* ¶¶ 22–23.] SIMO is a Taiwan-based chip manufacturer and was MaxLinear's target in the proposed merger. [*Id.* ¶¶ 21–22.]

Lead Plaintiffs are private investment funds who purchased or acquired SIMO American Depository Shares ("ADSs") from June 6, 2023 through July 26, 2023 (the alleged class period or "Class Period"). [*Id.* at p.1 & ¶ 127.] Plaintiffs bring these claims on behalf of a class of investors who purchased or acquired SIMO ADSs during the Class

---

[1] The Court takes judicial notice of Defendants' Exhibits 1–5 filed with the motion to dismiss: (1) the merger agreement contained in MaxLinear's Form S-4 as filed with the Securities and Exchange Commission ("SEC"), (2) the transcript from the June 6, 2023 Stifel Conference as published by FactSet CallStreet, LLC, (3) MaxLinear's Form 425 as filed with the SEC containing an excerpt from the Stifel Conference, (4) MaxLinear's Form 8-K as filed with the SEC on June 28, 2023, and (5) MaxLinear's Form 8-K as filed with the SEC on July 26, 2023. [ECF No. 51:4–7]. These exhibits contain facts that are "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Plaintiffs incorporate each of these items in their consolidated complaint and have not contested Defendants' request for notice.

Period. [*Id.* at p.1.] Plaintiffs claim that the acquiring party, MaxLinear, committed fraud in the course of the failed combination with SIMO. [*See id.* ¶¶ 126–131.]

As alleged, MaxLinear and SIMO announced the terms of the "transformative" $3.8 billion acquisition on May 5, 2022. [*Id.* ¶ 1.] The deal promised a 50% premium for SIMO ADS holders. [*Id.* ¶ 33.] According to Plaintiffs, upon the deal's announcement, MaxLinear claimed that the merger would allow the combined entity to compete at the highest level of the semiconductor supply industry and expand MaxLinear's geographic reach. [*Id.* ¶1.] But MaxLinear would need to clear regulatory hurdles before it could close the deal: approval by the Department of Justice's Antitrust Division, Federal Trade Commission, and by their Chinese corollary, the State Administration for Market Regulation ("SAMR"). [*See id.* ¶2; ECF No. 51-4 at 16.]

By its terms, the deal rested on clearance by antitrust authorities on or before August 7, 2023. [Compl. ¶ 39; ECF No. 51-4 at 21.] Plaintiffs claim that MaxLinear could terminate the deal if regulators failed to provide their blessing, thereby capping its liabilities to a $160 million merger break-up fee. [Compl. ¶ 47.] MaxLinear could also allegedly terminate if SIMO was in breach of its "representations, warranties or covenants" with certain conditions allowing for cure of the breach. [*Id.* ¶ 49.] Similarly, MaxLinear could terminate if SIMO experienced a "Material Adverse Event" as defined in the merger agreement. [*Id.* ¶ 50.]

According to Plaintiffs, SAMR antitrust review represented a key deal risk. [*Id.* ¶ 43.] MaxLinear "swiftly" obtained U.S. approval, but political risks relating to the semiconductor industry apparently created uncertainty about whether China would allow the deal to move forward. [*Id.* ¶ 44.] In support, Plaintiffs highlight numerous contemporaneously published news articles discussing China's supposed use of the merger review process to retaliate against U.S. companies as part of a larger trade dispute. [*Id.* ¶¶ 43–44.]

Nevertheless, third-party analysts allegedly reported MaxLinear's optimism about the deal. [*See id.* ¶ 54.] Plaintiffs' pleadings identify MaxLinear's own regular updates

about the merger. On April 26, 2023, MaxLinear issued a press release indicating that it remained "excited" by the "pending acquisition" and that "things [were] moving as expected on the SAMR front." [*Id.* ¶ 53.] In another statement that also preceded the Class Period, MaxLinear apparently announced on May 3, 2023 that they "continue[d] to actively work to get the [merger] done by mid-year," consistent with their internal expected timeframe. [*Id.*]

The first category of alleged misrepresentations upon which Plaintiffs' lawsuit rests followed. Plaintiffs assert that on June 6, 2023, MaxLinear and Defendant Seendripu participated in a conference ("the Stifel Conference") involving 300 companies and more than 1,600 investors, including institutional investors and those representing private equity and venture capital firms. [*Id.* ¶ 58.] During a so-called "fireside chat," a conference representative asked Defendant Seendripu about the merger, one this representative described as "one of the topics investors want to hear most about." [*Id.* ¶ 59; ECF No. 51-5 at 9.] Specifically, the representative asked about "SIMO," an "update on the asset strategically," and whether SIMO was "an asset that you're very interested in acquiring." [Compl. ¶ 59; ECF No. 51-6 at 2.] Defendant Seendripu responded that MaxLinear was "very, very . . . bullish[] that we can acquire the synergies that we told you all about," that the "basic rationale" for the merger "ha[d] not changed at all," and that he "believe[ed]" that SIMO was a "very strategic asset for [MaxLinear]." [Compl. ¶ 60; ECF No. 51-6 at 2.] Commenting on a specific merger-related synergy, Defendant Seendripu indicated that "together, we bring the portfolio to make it happen." [*Id.*] On June 7, 2023, MaxLinear filed a transcript excerpt containing the alleged misrepresentations with the SEC. [Compl. ¶ 61; *see generally* ECF No. 51-6.]

Defendants supplied the next purportedly fraudulent statement on June 28, 2023. [*Id.* ¶ 62.] At this point, the deal still had not received approval from antitrust regulators. [*Id.*] MaxLinear filed a Form 8-K with the SEC confirming that MaxLinear and SIMO "re-filed" for merger clearance under the Hart-Scott-Rodino Act. [*Id.* ¶ 62; ECF No. 51-7 at 3.] Plaintiffs claim that this statement was a misrepresentation in context. Allegedly,

MaxLinear's finances had taken a downturn, costs of financing had increased dramatically, and the merger no longer constituted an attractive business proposition. [*Id.* ¶¶ 65–70.] Plaintiffs allege that although Defendants went through the regulatory motions, they had no intention of completing the merger and instead hoped that SAMR would deny antitrust approval. [*See id.* ¶ 71.] Indeed, Plaintiffs maintain that MaxLinear was "not genuinely interested in closing the transaction" with SIMO given that "Defendants had not taken the most basic and rudimentary steps to prepare for an integration of the two companies." [*See id.* ¶¶ 90–99.]

On July 26, 2023, SAMR granted regulatory approval for the merger through an announcement on the agency's website. [*Id.* ¶ 72.] That same day, apparently within ten hours of SAMR's approval of the merger, MaxLinear issued a press release in which it announced the termination of the merger agreement on grounds that (1) SIMO had failed to specify certain merger conditions, (2) SIMO suffered a continuing Materially Adverse Event, and (3) SIMO made unspecified "breaches" of the Merger Agreement. [*Id.* ¶ 75; *see* ECF No. 51-8 at 3.] MaxLinear claimed in its press release that SIMO's qualifying breach had occurred months earlier, "as of May 5, 2023." [*Id.*]

## II.   STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) permits a party to file a motion to dismiss for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Section 10(b) of the Exchange Act bars conduct involving manipulation or deception, manipulation being practices that are intended to mislead investors by artificially affecting market activity, and deception being misrepresentation, or nondisclosure intended to deceive." *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 938 (9th Cir. 2009) (quoting *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 161 (2d Cir. 2000)).

"Section 20(a) of the Exchange Act imposes secondary liability on controlling persons involved in a primary Section 10(b) violation." *Lucid Motors,* 110 F.4th at 1184.

To assert a claim under Section 10(b), a plaintiff must allege: "(1) a material misrepresentation or omission by the defendant [("falsity")]; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1052 (9th Cir. 2014) (citation omitted). Plaintiffs alleging 10(b) violations are subject to heightened pleading standards pursuant to Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009), *as amended* (Feb. 10, 2009). These requirements at the 12(b)(6) stage have been characterized as "formidable." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1055 (9th Cir. 2008).

## III. DISCUSSION

Plaintiffs' theory of liability is straightforward. Plaintiffs allege that Defendants made material misrepresentations about MaxLinear's commitment to the merger all while surreptitiously intending to exit the agreement. But instead of unraveling the merger with due penalties, Defendants banked on the possibility that SAMR would thwart the transaction by withholding antitrust clearance. When SAMR unexpectedly approved the merger, Defendants concocted a sham breach by SIMO to avoid liabilities that MaxLinear would otherwise face from its own unilateral exit.

A preliminary question, aside and apart from Article III standing, is whether Plaintiffs have standing under the law to assert the claim. The private right of action from the text of Section 10(b) is a judicially fashioned one, and as such, the Supreme Court has placed limits on the class of plaintiffs who may seek relief under the statute. *See Lucid Motors,* 110 F.4th at 1184–85. Defendants challenge Plaintiffs' standing to maintain a Section 10(b) suit. [ECF No. 51 at 27.] As they allege in their consolidated complaint, Plaintiffs did not purchase MaxLinear stock during the Class Period and instead, held only

the securities of the target SIMO. According to Defendants, to have Section (10)(b) standing, Plaintiffs must have purchased *MaxLinear* securities during the Class Period.

At the time the parties initially briefed the motion to dismiss, Defendants sought to import the strict application of a standing test from the Second Circuit. Under this test—the "purchaser-seller" rule—Plaintiffs must "have bought or sold the security about which a misstatement was made." *See Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82, 85, 88 (2d Cir. 2022). Applying this test, the Second Circuit held that "purchasers of a security of an acquiring company [did] not have standing under Section 10(b) to sue [a] target company for alleged misstatements the target company made about itself prior to the merger between the two companies." *Id.* at 88. But at that earlier stage of litigation, Defendants and Plaintiffs agreed that the strict satisfaction of the "purchaser-seller" rule was not a requirement for litigants in the Ninth Circuit. *See*, *e.g.*, *In re Mullen Auto. Sec. Litig.*, No. CV223026DMGAGRX, 2023 WL 8125447, at *6 (C.D. Cal. Sept. 28, 2023) (explaining that the purchaser-seller rule "in the Second Circuit is not uniformly adopted outside that Circuit[]").

The parties did not then have the benefit of the Ninth Circuit's recent opinion in *Lucid Motors* which adopted the Second Circuit's reasoning from *Menora*.[2] In doing so, the Ninth Circuit explained that the "purchaser-seller" rule represented a "bright-line rule" faithful to Supreme Court precedent that "ma[de] clear that a plaintiff has standing to sue under Section 10(b) if the plaintiff purchased or sold the securities about which the alleged misrepresentations were made." *Lucid Motors*, 110 F.4th at 1186 (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 727, 755 (1975)).

Admittedly, the facts of *Menora* differ slightly from the ones animating the current dispute. Although *Menora* decided that shareholders of an acquirer did not have Section

---

[2] Defendants filed a notice of supplemental authority on August 9, 2024 in which they cited to *Lucid Motors* and reasserted their standing arguments. [ECF No. 58.] Plaintiffs filed a response on August 12, 2024. [ECF No. 59.]

10(b) standing to sue the target, it did so in the context of the target company's alleged misstatements about "*itself*" prior to the merger. *Menora*, 54 F.4th at 88. Specifically, those statements were limited to the target's own compliance with various anti-bribery laws. *See id.* Here, Plaintiffs have alleged misrepresentations made by Defendants relating to their: (1) evaluation of the merger, including SIMO's benefits to MaxLinear, and (2) commitment to completing the merger.

Plaintiffs, holders of SIMO securities, allege that the misrepresentations by MaxLinear harmed the value of their SIMO securities thereby providing statutory standing under Section 10(b). The Ninth Circuit in *Lucid Motors*, 110 F.4th at 1186, however rejected an alternative to the "purchaser-seller" rule, which asks the court to decide whether a security is "sufficiently connected to a misstatement" to establish statutory standing.

The key issue for standing is whether the misrepresentations were made about SIMO. The Court finds they were not. The identified statements amount to *MaxLinear*'s evaluation of the benefits of the merger and *MaxLinear*'s continued commitment to the merger's success as reflected in *MaxLinear*'s own regulatory filing. Although there appears be a significant connection between the shares of a target and the merger-related statements of its acquirer, the Ninth Circuit has set a bright-line rule that the "security" at issue must be one about which the alleged misrepresentations were made. The Ninth Circuit has imposed this rule despite the result that such a bright-line may "prevent[] some deserving plaintiffs from recovering damages." *Id.* at 1185 (quoting *Blue Chip Stamps*, 421 U.S. at 738).

To distinguish *Lucid Motors*, Plaintiffs cite to *In re Turquoise Hill Res. Ltd. Sec. Litig.* for the proposition that even under the "purchaser-seller" rule, plaintiffs who held shares of a majority-owned subsidiary had standing to bring a Section 10(b) lawsuit against the defendant-parent company for statements the parent made about a joint mining project. 625 F. Supp. 3d 164, 202 (S.D.N.Y. 2022). But the facts alleged in *Turquoise Hill* involved a parent company that exercised "near total control" over the subsidiary and their joint venture, including contractual control over the subsidiary's "public statements" about the

mining project. *See id.* at 202.  As such, the court reasoned that any statement the parent company made about the joint project was necessarily made about the subsidiary. *Id.*  The district court concluded that the parent's alleged misstatements were not "self-referential" but "directly concern[ed] the company in which [p]laintiffs invested"—the subsidiary in which the plaintiffs held shares. *Id.* (internal quotation marks omitted).  In contrast to the unique factual scenario pleaded in *Turquoise Hill*, Plaintiffs' consolidated complaint makes clear that "[a]t the time of Defendants' alleged misrepresentations, [MaxLinear] and [SIMO] were two entirely separate companies."[3]  *Lucid Motors*, 110 F.4th at 1187.

Moreover, the *Turquoise Hill* opinion, which preceded the Second Circuit's decision in *Menora*, applied the "sufficiently connected" test (one that measured the relationship between the "false statements of the non-issuer" and the plaintiffs' purchase of the subsidiary's stock). *See Turquoise Hill*, 625 F. Supp. 3d at 201.  This test is one that the Ninth Circuit *explicitly* disavowed in *Lucid Motors*.  110 F.4th at 1186.  Nevertheless, whether the *Turquoise Hill* analysis impedes on the Ninth Circuit's "bright-line" application of the "purchaser-seller" rule is a question this Court need not answer since no similar "control" facts have been pleaded here.

///
///
///

---

[3] Plaintiffs themselves underscore this separation through their allegation that Defendants failed to engage in even the most "basic" pre-merger integration planning. [*See* Compl. ¶¶ 90–99.]

## IV. CONCLUSION

The Court is not aware of any relevant exceptions to the "purchaser-seller" rule which is now controlling law in the Ninth Circuit. Because Plaintiffs did not hold MaxLinear's stock during the Class Period and the alleged misrepresentations were made about MaxLinear, the Court grants the Defendants' motion to dismiss [ECF No. 50] for lack of 10(b) standing pursuant to Fed. R. Civ. P. 12(b)(6).

The Court dismisses this case without prejudice with consideration to the intervening decision in *Lucid Motors*. Plaintiffs may file any amended complaint by Sept. 18, 2024.

It is **SO ORDERED**.

Dated: August 28, 2024

Hon. Cathy Ann Bencivengo
United States District Judge