# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WATER ISLAND EVENT-DRIVEN FUND, on Behalf of Itself and All Others Similarly Situated, et al.,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>MAXLINEAR, INC., et al.,<br><br>　　　　　　　　　　Defendants. | Case No.: 3:23-cv-01607-CAB-VET<br><br>**ORDER GRANTING MOTIONS TO DISMISS**<br><br>**[Doc. Nos. 75, 77]** |

On August 28, 2024, the Court dismissed Plaintiffs' first amended complaint without prejudice. [Doc. No. 61.] On September 18, 2024, Plaintiffs filed a second amended complaint ("SAC"). [Doc. No. 62.] Plaintiffs allege that Defendants made materially false and misleading statements in violation of Sections 10(b) and 20(a) of the Securities Exchange Act. Defendants Silicon Motion Technology Corporation ("SIMO"), CEO Wallace Kou, and CFO Riyadh Lai ("SIMO Defendants") filed a motion to dismiss the amended complaint. [Doc. No. 75.] Defendants MaxLinear, Inc., CEO Kishore Seendripu, and CFO/CCO Steven Litchfield ("MaxLinear Defendants") separately filed their own motion to dismiss the amended complaint. [Doc. No. 77.] For the reasons below, the Court **GRANTS** the motions to dismiss.

## I. BACKGROUND

The facts alleged in this amended complaint are nearly identical to the initial complaint. In 2022, Defendant MaxLinear, an American telecommunications corporation, and Defendant SIMO, a Taiwanese chip manufacturer, announced a merger in which MaxLinear would acquire SIMO for $3.8 billion. Lead Plaintiffs are private investment funds who purchased or acquired SIMO American Depository Shares ("ADS") from May 5, 2023 through July 26, 2023 (the "Class Period"). Plaintiffs allege that MaxLinear Defendants committed fraud by assuring ADS investors that the merger was on track to close, only to immediately terminate it after it was approved by China's main antitrust regulator on July 26, 2023. MaxLinear's proffered basis for termination was a previously undisclosed, alleged breach of the merger agreement by SIMO over a month prior.

As for SIMO Defendants, they allegedly stated that they were proceeding with the merger while omitting that (1) there was a purported breach of the merger agreement that would prevent it from closing and (2) that MaxLinear was not proceeding with basic merger/integration procedures. Additionally, Plaintiffs allege SIMO Defendants had a duty to review MaxLinear's statements to SIMO investors and update prior statements to disclose the existence of the breach and MaxLinear's lack of integration planning.

## II. LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) permits a party to file a motion to dismiss for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Section 10(b) of the Exchange Act bars conduct involving manipulation or deception, manipulation being practices that are intended to mislead investors by artificially affecting market activity, and deception being misrepresentation, or nondisclosure intended to deceive." *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 938 (9th Cir. 2009) (quoting *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 161 (2d Cir. 2000)).

"Section 20(a) of the Exchange Act imposes secondary liability on controlling persons involved in a primary Section 10(b) violation." *In re: CCIV / Lucid Motors Securities Litigation,* 110 F.4th 1181, 1184 (9th Cir. 2024).

To assert a claim under Section 10(b), a plaintiff must allege: "(1) a material misrepresentation or omission by the defendant [('falsity')]; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1052 (9th Cir. 2014) (citation omitted). Plaintiffs alleging 10(b) violations are subject to heightened pleading standards pursuant to Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009), *as amended* (Feb. 10, 2009). These requirements at the 12(b)(6) stage have been characterized as "formidable." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1055 (9th Cir. 2008).

### III. DISCUSSION

#### A. Section 10(b) Claim Against SIMO Defendants

Plaintiffs allege that three statements by SIMO were materially false and misleading in violation of Section 10(b). In a May 5, 2023, Form 6-K and press release, SIMO allegedly stated that the merger was "pending satisfaction of customary closing conditions, including antitrust approval [from SAMR]." [SAC ¶ 14.] In a June 28, 2023, Form 6-K, SIMO allegedly stated they had re-filed for antitrust approval in the United States. [SAC ¶ 114.] Finally, in a July 7, 2023 Form 6-K and press release, they stated that they would not conduct an earnings call due to "restrictions associated with the [Merger] Transaction." [SAC ¶ 173.]

Plaintiffs argue that each of these statements were materially false and misleading because they created "the impression that the Merger Agreement was undisputedly in effect, and that the Merger would close if approved by regulators" while omitting the purported facts that (1) SIMO breached the merger agreement as of May 5, 2023, and (2) MaxLinear was not engaging in normal course integration and transition activities,

indicating that MaxLinear intended to withdraw from the agreement. [Doc. No. 82 at 12.] Plaintiffs assert these statements "assured investors that the [m]erger would proceed if it was approved by SAMR." [*Id.* at 10.]

None of SIMO's alleged statements were necessarily false as the merger did need to satisfy various closing conditions, SIMO had re-filed for U.S. antitrust approval, and SIMO did not conduct an earnings call due to merger restrictions. Indeed, in their opposition, Plaintiffs do not challenge SIMO Defendants' contention that their statements were not literally false. [*Id.* at 12.]

Nonetheless, SIMO's statements may still violate Section 10(b) if they omitted material information and were misleading. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008–09 (9th Cir. 2018). An omission "is material if there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *McCormick v. Fund Am. Companies, Inc.*, 26 F.3d 869, 876 (9th Cir. 1994) (internal quotation marks omitted) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32, (1988)). However, not all material information needs to be disclosed. *See Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 620 (9th Cir. 2022). Disclosure is only required "when necessary to make . . . statements made, in the light of the circumstances under which they were made, not misleading." *Id.* In other words, a material omission is misleading where it "affirmatively create[s] an impression of a state of affairs that differ[s] in a material way from the one that actually exist[s]." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).

///
///
///

### i. SIMO's Alleged Breach

Plaintiffs first allege that SIMO Defendants' three statements were misleading because they omitted SIMO's purported breach of the merger agreement. The Court disagrees.

#### 1. Falsity

##### a. May 5 Statement

The portion of the May 5 statement that Plaintiffs challenge noted that the merger was "pending satisfaction of customary closing conditions, including antitrust approval [from SAMR]." [SAC ¶ 113.] Plaintiffs incorrectly argue that because SIMO Defendants highlighted one risk to closing—SAMR approval—they were obligated to also disclose other risks, including the breach of the merger agreement. [*Id.* at ¶ 51]; *see Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011) (emphasizing that Section 10(b) does "not create an affirmative duty to disclose any and all material information."). Even if omission of the breach is material, SIMO's statement does not mislead because it highlighted additional conditions, besides antitrust approval, that SIMO and MaxLinear still had to satisfy, which could include curing breaches or other merger issues.[1] *See Weston Fam.*, 29 F.4th at 620.

##### b. June 28 Statement

In the June 28 filing, SIMO stated that the merger was "conditioned upon, among other things, the expiration or termination of the waiting period . . . under the Hart-Scott Rodino Antitrust Improvements Act of 1976[.]" [SAC ¶ 114.] The statement continues that "MaxLinear and [SIMO] previously filed under the HSR Act, and the HSR Waiting Period expired . . . on June 27, 2022[,]" but because "the [m]erger was not consummated by June 27, 2023, clearance under the HSR Act [] expired, and on June 28, 2023, MaxLinear and [SIMO] re-filed under the HSR Act." [*Id.*]

---

[1] Plaintiffs themselves allege that SIMO Defendants were to be notified by MaxLinear of any breaches and provided the "ability to cure the [] breach[.]" [SAC ¶ 92.]

Given that SIMO informed investors that SIMO and MaxLinear were re-filing for merger clearance, indicating that the merger agreement, at some level, was progressing, the Court finds that the reasonable investor would not find disclosure of an earlier breach to *significantly alter* the total mix of information that SIMO made available. *See Basic*, 485 U.S. at 231–32. Thus, the omission is not material. Even if material, the omission does not mislead investors as the statement makes it explicitly clear that the merger was still conditioned upon multiple factors besides HSR clearance, which, again, could include curing any outstanding breaches of the merger agreement. *See Weston Fam.*, 29 F.4th at 620. This is distinguishable from classic examples of misleading statements such as when a defendant shares positive information to the market but omits "adverse information that cuts against the positive information." *See Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 706 (9th Cir. 2016). Here, Defendants shared no "positive" information, such as a promise that the merger would go through without issue, but only published a neutral update that conditions remained, and that they re-filed for clearance as legally required.

### c. July 7 Statement

In the July 7 press release, SIMO simply stated that they would release "second quarter 2023 financial results . . . on July 27, 2023" but not conduct a "customary earnings conference call due to restrictions associated with the [merger] with MaxLinear" nor provide updates on the merger. [SAC ¶ 173.] Contrary to Plaintiffs' assertion, omission of the claimed breach did not create the impression that the merger was not facing any issues and that it would be completed. *See Brody*, 280 F.3d at 1006. Rather, it only communicated that the merger was still in progress/effect and that no updates would be given. Therefore, though the breach may have been generally relevant to the statement (given that the statement referenced the merger), its omission was not misleading. *See id.* ("Often, a statement will not mislead even if it . . . does not include all relevant facts.").

Accordingly, the Court finds that none of SIMO Defendants' statements were misleading due to the omission of the purported breach. However, courts have held that the first prong of the Section 10(b) analysis—falsity—"should ordinarily be left" to a jury

except where "reasonable minds [could] not differ[.] *Fecht v. Price Co.* 70 F.3d 1078, 1081 (9th Cir. 1995) (internal citations and quotation marks omitted). Recognizing that potential deference, even if the Court assumed that Plaintiffs satisfy falsity for the omission of the breach, they nonetheless fail to adequately plead scienter.

### 2. Scienter

To establish scienter, plaintiffs "must allege that the defendant made false or misleading statements with an intent to deceive, manipulate, or defraud, or with deliberate recklessness." *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1106 (9th Cir. 2021) (internal quotation marks omitted). In determining intent, the Court considers whether Defendant(s) had knowledge of the omitted information. *See Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 779–80 (9th Cir. 2023) ("The fact that [Defendant] was aware . . . of [the acquiring company's] reconsideration of the merger is sufficient to raise a strong inference that Defendants knew of the possibility of misleading the shareholders."). Reckless conduct is an "extreme departure from the standards of ordinary care" and similarly considers whether the "danger of misleading" was known to the defendant, or so obvious they should have been aware of it. *Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564, 1569 (9th Cir. 1990). Plaintiffs must state particularized facts "giving rise to a strong inference that the defendant acted with the required state of mind." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 321 (2007) (quoting 15 U.S.C. § 78u–4(b)(2)). Here, Plaintiffs fail to establish that SIMO Defendants acted with either intent to defraud or deliberate recklessness as they do not allege sufficient facts showing SIMO Defendants knew or should have known of the claimed breach.

Plaintiffs assert that SIMO's statements "did not fairly align with the information [SIMO] had at the time," [Doc. No. 82 at 12], but in their complaint Plaintiffs state that "MaxLinear never provided [SIMO] with written notice of . . . breaches or [a materially adverse effect]" as MaxLinear was allegedly required to do. [SAC ¶ 180.] Plaintiffs state that "MaxLinear had *internally concluded* that [SIMO] was in material breach of the Merger Agreement [and] suffered [a materially adverse effect]." [*Id.* at ¶ 169 (emphasis

added).] As alleged, the determination that SIMO breached the agreement was made solely by MaxLinear, who never informed SIMO.

Plaintiffs' citation to *Glazer* provides them no support. There, the Ninth Circuit found that defendant—a company that was to be acquired—misled investors when it stated that it expected its merger to close but omitted the fact that the acquiring company called and informed defendant that they were "considering not closing the merger[.]" *See Glazer*, 63 F.4th at 779. Here, however, Plaintiffs do not allege that MaxLinear alerted SIMO Defendants that they were "reconsidering the deal"—in any way. *Id.* Rather, Plaintiffs insist that MaxLinear never notified SIMO Defendants, and only offer repeated conclusory statements that SIMO knew of the breach and should have disclosed it. [*See, e.g.*, SAC ¶¶ 12, 104, 179.]

Indeed, Plaintiffs fail to identify what the breach even was, when it occurred, or who at SIMO was aware of it. This is wholly insufficient to survive a motion to dismiss a securities fraud claim. *See Tellabs, Inc.*, 551 U.S. at 321. With nothing but conclusory allegations to support their claim that SIMO Defendants knew or should have known of the breach, Plaintiffs fail to adequately allege scienter.

### ii.    MaxLinear's Lack of Integration Efforts

Regarding lack of integration, Plaintiffs allege that SIMO Defendants' three statements omitted that MaxLinear did not conduct basic, pre-merger integration planning, including reviewing SIMO's contracts or establishing merger timelines or checklists.

Plaintiffs cite two confidential former MaxLinear employees ("FE 1" and "FE 2") to support their claim. FE 1, the former director of global trade compliance, asserts that she asked her supervisor every six weeks from December 2022 until July 2023 when she would be provided with an integration plan for the merger but was never provided one. [SAC ¶ 141.] She alleges that given her position "she would have been involved in many integration conversations across different business functions and, at minimum, been kept informed of integration action plans and milestones." [*Id.* at ¶ 146.] FE 1 further alleges that as late as eight days before MaxLinear terminated the merger, she observed no merger

efforts across the company, including human resources, marketing, and logistics/supply chain, even though "comprehensive merger and integration planning was vital if MaxLinear was intent on completing the [m]erger[.]" [*Id.* at ¶ 138.]

FE 1 states that MaxLinear's lack of integration activity "was unlike anything she had experienced in her long professional career, where she was directly involved in numerous M&A transactions and handled merger and integration planning on behalf of the acquiring company." [*Id.* at ¶ 142.] She finally states that MaxLinear's general and associate general counsels "shifted their focus to implementing general company-wide internal compliance trainings that were rolled out between May and July 2023, and declined to address FE 1's repeated calls that proper merger and integration teams be set-up, checklists put-in place, [and] milestones established[.]" [*Id.* at ¶ 145.]

FE 2, a former director of product marketing, similarly alleges that "despite her senior division being responsible for half of MaxLinear's sales, she was not provided with any integration checklists, plans, or milestones for the [m]erger." [*Id.* at ¶ 149.] She also alleges that MaxLinear decided to walk away from the merger due to "'red flags' of MaxLinear's poor financial health[.]" [*Id.*]

Plaintiffs argue this lack of integration should have alerted SIMO that MaxLinear would pull out of the merger agreement, and that SIMO Defendants' subsequent failure to disclose renders the three challenged statements misleading by omission. Even if the Court assumes that the omission of the lack of integration activity is both material and misleading as to all three of the statements, Plaintiffs fail to satisfy the PSLRA's heightened pleading standard for scienter.

### 1. Scienter—Core Operations Theory

Plaintiffs plead several facts, based on confidential witness statements by FE 1 and FE 2, demonstrating that MaxLinear was not taking appropriate steps to prepare for the merger and knew it would pull out of the merger agreement. However, the complaint provides only one insufficient fact in attempting to demonstrate that SIMO Defendants were aware of MaxLinear's lack of integration activity—that MaxLinear turned down

1  SIMO's offer to translate SIMO transaction contracts that were in Chinese. [SAC ¶¶ 138,
2  184.] Instead, Plaintiffs rely principally on the "absurdity" test of the "core-operations
3  theory" of scienter and argue that a "strong inference of management's knowledge of a fact
4  is pled 'where . . . it would be absurd to suggest management was without knowledge of
5  the matter.'" [Doc. No. 82 at 15–16 (quoting *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776,
6  786 (9th Cir. 2008)) (internal quotation marks omitted).]; *see Oklahoma Firefighters*
7  *Pension & Ret. Sys. v. Snap Inc.*, No. 23-3932, 2024 WL 5182634, at *2 (9th Cir. Dec. 20,
8  2024).

9        Plaintiffs assert that a merger "is an enormous task that [] require[s] work across . . .
10 departments on both sides" and that "it could not have escaped the attention of [SIMO]
11 Defendants that such activities had stopped or that [SIMO's] 'overtures' to assist in
12 integration and transition efforts had been ignored by MaxLinear." [Doc. No. 82 at 17.]
13 Plaintiffs further claim that "[i]t is implausible to suggest that [SIMO] Defendants,
14 including the CEO and CFO, were not aware of the cessation of integration and transition
15 activities" because those activities "would have permeated the daily work of CEO Koui
16 and CFO Lai[.]" [*Id.* at 15–16.]

17       It is "unusual" and "exceedingly rare" to find the core operations inference—without
18 any detailed allegations of actual knowledge—sufficient to clear a 12(b)(6) motion under
19 the PSLRA. *See S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785, 785 n.3 (9th Cir. 2008).
20 This case is especially rare in that Plaintiffs seek to establish a strong inference not of a
21 company's management's knowledge of internal activity at their *own company*, but at
22 *another company*. The Court finds such an inference to be a step too far. Indeed, none of
23 the five cases that Plaintiffs cited support a core operations inference finding for the current
24 facts. In four of the five cases, at issue was management's knowledge of a fact or activity
25 at their own company—not another company. *SEB Inv. Mgmt. AB v. Align Tech., Inc.*, 485
26 F. Supp. 3d 1113, 1133 (N.D. Cal. 2020) (finding chief executive must have known about
27 implementation of a discounting promotion within their own company); *3226701 Canada,*
28 *Inc. v. Qualcomm, Inc.*, No. 15CV2678-MMA (WVG), 2017 WL 4759021, at *23 (S.D.

Cal. Oct. 20, 2017) (finding chief executive must have known company's processor chip product had overheating issues); *United Ass'n Nat'l Pension Fund v. Carvana Co.*, 759 F. Supp. 3d 926, 977 (D. Ariz. 2024) (finding it absurd to suggest chief executives did not know company was flouting state motor-vehicle title and registration laws); *Reese v. Malone*, 747 F.3d 557, 576 (9th Cir. 2014) (finding it absurd to suggest oil company executive did not know about condition of company's pipelines), *overruled on other ground by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017).

The one remaining case that Plaintiffs cite concerned whether a Snap Inc. executive knew that most advertisers on Snapchat had not implemented an advertising program called SKAN, which was related to Apple's transition to App Tracking Transparency ("ATT"). *Okla. Firefighters Pension & Ret. Sys. v. Snap Inc.*, 2024 WL 5182634, at *1 (9th Cir. Dec. 20, 2024). The Ninth Circuit found that plaintiffs met the "absurdity" test because, in addition to allegations that the ATT transition threatened over half of Snap's revenue and that the executive was responsible for advertising, plaintiffs alleged that (1) two Snap employees confirmed that very few advertisers implemented SKAN, (2) the executive had expressed her concerns about the ATT transition, and (3) that executive regularly met with key advertisers.[2] *Id.* at *2–3. This case is easily distinguishable. Plaintiffs do not provide a single particularized fact about any actual information SIMO Defendants CEO Kou and CFO Lai knew regarding MaxLinear's internal integration activities, how they learned of any integration failures, or any statement or allegation from a SIMO employee expressing

---

[2] Though the "absurdity" test may be satisfied without accompanying particularized allegations, *Reese*, 747 F.3d at 576, the Ninth Circuit in *Snap Inc.* expressly considered exactly such allegations in concluding that Plaintiffs satisfied the test. *Snap Inc.*, 2024 WL 5182634, at *2–3 ("Given the [complaint's] allegations that the ATT transition threatened more than half of Snap's revenue, [the executive's] responsibility for [] advertising, *and in view of all the other allegations in the [complaint]* . . . ." (emphasis added)).

the same.[3]  The Court declines to find that a lack of internal integration planning at Company A, which is acquiring Company B, would "permeate[] the daily work" of executives at Company B, or be entirely obvious to them, such as to establish a core operations inference without additional particularized allegations. [Doc. No. 82 at 16]; *see* 15 U.S.C. § 78u-4(b)(2).

Moreover, in determining whether Plaintiffs have pled a strong inference of scienter, "the court must take into account plausible opposing inferences." *See Tellabs, Inc.*, 551 U.S. at 322–23 (internal quotation marks omitted).  In other words, the Court must ask whether "a reasonable person [would] deem the inference of scienter at least as strong as any opposing inference." *In re NVIDIA*, 768 F.3d at 1056.  "The strong inference standard present[s] no small hurdle for the securities fraud plaintiff." *Prodanova*, 993 F.3d at 1106.  The inference must be "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314.

The Court finds a more plausible inference in that SIMO Defendants simply did not know that MaxLinear's integration preparation was lacking, or if they did, they reasonably believed that MaxLinear intended to merge (given, *inter alia*,[4] the renewed HSR filing), but also that MaxLinear knew what it needed to do to integrate properly, when it needed to do so, and, as the acquiring company[5], would integrate as it saw fit.  Accordingly, the Court

---

[3] The one non-conclusory allegation concerning SIMO that Plaintiffs make—that they made personnel available to MaxLinear to review and translate contracts, but MaxLinear rejected the offer—does not include any particularized facts showing that Defendants Kou and/or Lai knew or should have known that information. *See Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014) (holding that the core operations doctrine "relies on the principle that *corporate officers* have knowledge of the critical core operation of their companies" (emphasis added)).

[4] Plaintiffs also allege that FE 1 and MaxLinear's general and associate counsels "had a call with [SIMO's] compliance professionals on December 7, 2022 to have an initial assessment of [SIMO's] compliance efforts and subsequent [] review [of] their compliance tools and systems." [SAC ¶ 139.]  This weighs in favor of the inference that SIMO Defendants believed MaxLinear intended to go through with the agreement and acquire SIMO.

[5] Plaintiffs repeatedly note that MaxLinear was the acquiring company. [*See, e.g.*, SAC ¶¶ 145, 161.]

finds that Plaintiffs fail to adequately allege scienter against SIMO Defendants for omission of MaxLinear's lack of integration activity.

### iii. Updating Prior Statements

Plaintiffs also argue that SIMO Defendants violated "federal securities laws by failing to update its prior statements" with the breach discussed above, "other material breaches" of the merger agreement, and MaxLinear's lack of integration activity. [SAC ¶ 52.] Plaintiffs do not specify which federal securities law SIMO Defendants allegedly violated by failing to update their statements. Nonetheless, unlike some other circuits, neither the Ninth Circuit nor the Supreme Court recognizes a duty to correct. *See In re Yahoo! Inc. Sec. Litig.*, 611 F. App'x 387, 389 (9th Cir. 2015). Even if SIMO Defendants did have such a duty though, Plaintiffs fail to show that SIMO Defendants knew or should have known about the breaches or lack of integration activity before MaxLinear publicly announced it was terminating the merger. *See Stransky v. Cummins Engine Co., Inc.*, 51 F.3d 1329, 1331 (7th Cir. 1995) (to trigger the duty to correct—after making a false or misleading statement—a defendant must have "subsequently discovered" the relevant information).

### iv. SIMO Liability for MaxLinear Statements

Plaintiffs assert that SIMO Defendants adopted MaxLinear's statements filed with the SEC on June 7, 2023. [*See* SAC ¶ 66; *see also* Doc. No. 82 at 13.] The Court disagrees. For Section 10(b) purposes, "the maker of a statement is the person or entity with ultimate authority over the statement." *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). Defendant Kishore Seendripu, MaxLinear's CEO, initially made the challenged statement in response to a question while on a panel at a business conference on June 6, 2023. MaxLinear then filed the Form 425 disclosing the statement the following day.[6] Plaintiffs do not allege any facts showing that SIMO Defendants had ultimate

---

[6] Plaintiffs refer to both the June 6 and June 7 statements. As both statements are identical, for clarity, the Court refers only to the June 7 statement.

authority over the statement that Defendant Seendripu made.  Accordingly, the Court finds SIMO Defendants are not liable for the June 7 statement.

### B. Section 10(b) Claim Against MaxLinear Defendants

The Court previously dismissed Plaintiffs' claims against MaxLinear following the Ninth Circuit's opinion in *Lucid Motors,* 110 F.4th 1181 (9th Cir. 2024).  [Doc. No. 61 at 10.]  There, the Ninth Circuit established a "bright-line rule" that to have statutory standing under Section 10(b), the plaintiff must have "purchased or sold the securities about which the alleged misrepresentations were made." *Id.* at 1186.  The Court held that Plaintiffs, as SIMO shareholders, lacked statutory standing against MaxLinear because MaxLinear's alleged misrepresentations were about MaxLinear, not SIMO.  [Doc. No. 61 at 8.] Plaintiffs previously challenged two statements: (1) the above June 7 statement made by Defendants MaxLinear and Seendripu, and (2) a June 28 statement in a Form 425 filed by MaxLinear which was identical to the one filed by SIMO on the same date.  The Court found that the June 7 statement "amount[ed] to MaxLinear's evaluation of the benefits of the merger" and that the June 28 statement concerned "MaxLinear's continued commitment to the merger's success" as it was re-filing for regulatory clearance. [*Id.*] The Court reaffirms its previous holding.

In the June 7 statement, MaxLinear disclosed that CEO Seendripu, in response to a question on whether MaxLinear was still interested in acquiring SIMO, said that MaxLinear was "very, very . . . bullish[] that we can acquire the synergies that we told you all about," that the "basic rationale" for the merger "ha[d] not changed at all," and that he "believe[ed]" that SIMO was a "very strategic asset for [MaxLinear]."  [SAC ¶ 104; Doc. No. 51-6 at 2.]

Although Plaintiffs urge the Court to consider the fact that Seendripu's statement was in response to a question about SIMO and that MaxLinear listed SIMO as the subject company in its Form 425 filing, [Doc. No. 81 at 14–15], the Ninth Circuit and the Supreme

Court "expressly rejected" conducting a "fact-intensive inquiry."[7] *Lucid Motors*, 110 F.4th at 1186 (9th Cir. 2024) (adopting a bright-line rule to avoid "endless case-by-case" analysis). Instead, the Court looks at the challenged statement to determine whether the alleged misrepresentation was made about the security that plaintiff either "purchased or sold." *Id.* The Court again finds the misrepresentation made was about MaxLinear's commitment to the merger and its evaluation of the benefits. Plaintiffs themselves state that the June 7 statement was about "specifically, MaxLinear's commitment to completing the [m]erger[.]" [Doc. No. 81 at 14.] To be sure, Plaintiffs continue and say that the merger would be completed by MaxLinear "purchasing all [SIMO] equity securities at the deal price." [*Id.*] But drawing such a connection seems more appropriate for the "sufficiently connected" test, which the Ninth Circuit has explicitly disavowed. *Lucid Motors*, 110 F.4th at 1186.

Regarding the June 28 statement where MaxLinear confirmed it and SIMO had re-filed for clearance under the HSR Act, Plaintiffs similarly allege that MaxLinear "gave the false impression that MaxLinear remained committed to completing the [m]erger . . . while omitting . . . that MaxLinear would not go through with the deal[.]" [SAC ¶ 169.] This clearly demonstrates the misrepresentation concerns MaxLinear, not SIMO.

The Court reiterates: "Although there appears [to] be a significant connection between the shares of a target and the merger-related statements of its acquirer, the Ninth Circuit has set a bright-line rule that the 'security' at issue must be one about which the

---

[7] Plaintiffs cite three cases to support their assertion that the Court should consider the question that prompts a statement when determining which security a misrepresentation is about. *In re Apple Inc. Sec. Litig.*, 2020 WL 6482014, at *5 (N.D. Cal. Nov. 4, 2020); *Abramson v. Newlink Genetics Corp.*, 965 F.3d 165, 178 (2d Cir. 2020); *In re Synchrony Fin. Sec. Litig.*, 2022 WL 427499, at *10 (D. Conn. Feb. 11, 2022). These cases, however, were decided pre-*Lucid Motors* and considered the question preceding the relevant statement for purposes of falsity or scienter, not standing. Indeed, none of the courts were ascertaining which security a misrepresentation was made about (the test clarified by *Lucid Motors*). See *In re Apple*, 2020 WL 6482014, at *5 (determining whether a statement was referring to company's past or present financial quarter); see *Abramson*, 965 F.3d at 178 (whether a statement conveyed a specific scientific fact); see *In re Synchrony*, 2022 WL 427499, at *10 (whether a question that prompted an answer was ambiguous such that the answer may have been "tenuous[ly] false").

alleged misrepresentations were made." [Doc. No. 61 at 8.] Plaintiffs repeatedly allege that MaxLinear Defendants' challenged statements misrepresented *MaxLinear's* commitment to the merger, *not* SIMO's. As the challenged misrepresentations were made about MaxLinear, the Court again finds Plaintiffs, as SIMO shareholders, lack statutory standing to sue MaxLinear. *See Lucid Motors*, 110 F.4th at 1186.

### C. Section 20(a) Claims

Plaintiffs also assert Section 20(a) claims against the individual Defendants, which imposes control person liability for Section 10(b) violations. *See Weston Family*, 29 F.4th at 623. As Plaintiffs' Section 10(b) claims fail, so do their Section 20(a) claims. *See id.* (holding that control person liability cannot survive where plaintiffs do not adequately plead a primary violation of Section 10(b)).

### IV. CONCLUSION

As Plaintiffs have failed to adequately plead a Section 10(b) or Section 20(a) claim against any of the Defendants, the Court **GRANTS** the motions to dismiss. [Doc. Nos. 75, 77.] The case is **DISMISSED with prejudice**.

It is **SO ORDERED**.

Dated: July 15, 2025

Hon. Cathy Ann Bencivengo
United States District Judge